| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br>Recurridos<br>v.<br>Estado Libre Asociado de Puerto Rico<br>Peticionario | |
| José Antonio Cruz López<br>Recurrido<br>v.<br>Estado Libre Asociado de Puerto Rico, et als.<br>Peticionarios | |
| Orlando Rodríguez Rodríguez<br>Recurrido<br>v.<br>Estado Libre Asociado de Puerto Rico, et als.<br>Peticionarios | Certiorari<br><br>2015 TSPR 152<br><br>194 DPR ____ |
| Reliable Financial Services, Inc. y Triple-S Propiedad<br>Recurridos<br>v.<br>Estado Libre Asociado de Puerto Rico<br>Peticionario | |
| William Morales Rosario<br>Recurrido<br>v.<br>Estado Libre Asociado de Puerto Rico<br>Peticionario | |
| Reynaldo Ayala Villanueva, Raymond Irizarry García<br>Recurridos<br>v.<br>Estado Libre Asociado de Puerto Rico<br>Peticionario | |
| María del C. Acevedo Márquez<br>Recurrida<br>v. | |

| Estado Libre Asociado de Puerto Rico<br>Peticionario<br>------------------------------<br>Mapfre Praico Insurance Company, Reliable Financial Services, Inc.<br>Peticionarios<br>Y Waldemar R. Santiago Ramos y Fulano de Tal<br>v.<br>Estado Libre Asociado de Puerto Rico<br>Recurrido | |

Número del Caso: CC-2013-892


Fecha: 5 de noviembre de 2015



Tribunal de Apelaciones:

        Región Judicial de Caguas y Utuado, Panel XI


CC-2012-767


Oficina del Procuradora General:

        Lcdo. Luis R. Román Negrón
        Procuradora General

        Lcda. Lizzette Mejías Avilés
        Procuradora General Auxiliar

        Lcda. María A. Hernandez Martín
        Procuradora General Auxiliar

        Lcda. Ana Garces Camacho
        Procuradora General Auxiliar

Abogados de la Parte Recurrida:

        Lcdo. Edgardo Rosario Madera

CC-2012-886

Oficina del Procurador General:

       Lcdo. Luis R. Román Negrón
       Procurador General

       Lcda. Margarita Mercado Echegaray
       Procuradora General

       Lcda. Ana Garces Camacho
       Procuradora General Auxiliar

       Lcda. Marangeli Colón Requejo
       Procuradora General Auxiliar

       Lcda. Lizzette Mejías Avilés
       Procuradora General Auxiliar

       Lcda. María A. Hernandez Martín
       Procuradora General Auxiliar


Abogado de la Parte Recurrida:

       Lcdo. Alfredo Ortiz Rovira

CC-2012-922

Oficina del Procurador General:

       Lcdo. Luis R. Román Negrón
       Procurador General

       Lcda. Margarita Mercado Echegaray
       Procuradora General

       Lcda. Tanaira Padilla
       Subprocuradora General

       Lcda. Lizzette Mejías Avilés
       Procuradora General Auxiliar

       Lcda. Marangeli Colón Requejo
       Procuradora General Auxiliar


       Lcda. María A. Hernandez Martín
       Procuradora General Auxiliar

CC-2013-541

Oficina de la Procuradora General:

Lcda. Karla Pacheco Álvarez
Subprocuradora General

Lcda. Tanaira Padilla Rodríguez
Subprocuradora General

Lcda. María Astrid Hernandez Martín
Procuradora General Auxiliar

Abogado de la Parte Recurrida:

Lcdo. Edgardo Rosario

CC-2013-560

Oficina de la Procuradora General:

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcda. Tanaira Padilla Rodríguez
Subprocuradora General

Lcda. María A. Hernández Martín
Procuradora General Auxiliar

Abogado de la Parte Recurrida

Lcdo. David Daniel Rodríguez

CC-2013-572

Oficina de la Procuradora General:

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcda. Karla Pacheco Álvarez
Subprocuradora General

Lcda. María A. Hernández Martín
Procuradora General Auxiliar

Abogados de la Parte Recurrida:

Lcdo. Lemuel Velilla Reyes
Lcdo. Jesús Miranda Díaz

CC-2013-730

Oficina de la Procuradora General:

       Lcda. Margarita Mercado Echegaray
       Procuradora General

       Lcda. Tanaira Padilla
       Subprocuradora General

       Lcda. Jannelle M. Laforet Matos
       Procuradora General Auxiliar

       Lcda. María A. Hernandez Martin
       Procuradora General Auxiliar

CC-2013-1077

Abogada de la parte Peticionaria:

       Lcda. María Celeste Rodriguez Miranda


Abogado de la parte Recurrida:

       Lcdo. Lemuel Velilla Reyes
       Lcdo. Jesús Miranda Díaz




Materia: Resolución del Tribunal con votos particulares de conformidad y votos particulares disidentes.




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2012-0767 |
| ---------------------------- | |
| José Antonio Cruz López<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>Peticionarios | CC-2012-0886 |
| ---------------------------- | |
| Orlando Rodríguez Rodríguez<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>Peticionarios | CC-2012-0922 |
| ---------------------------- | |
| Reliable Financial Services, Inc. y Triple-S Propiedad<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-0541 |

---------------------------------

William Morales Rosario

Recurrido

v.

Estado Libre Asociado de Puerto Rico

Peticionario

CC-2013-0560

---------------------------------

Reynaldo Ayala Villanueva, Raymond Irizarry García

Recurridos

v.

Estado Libre Asociado de Puerto Rico

Peticionario

CC-2013-0572

---------------------------------

María del C. Acevedo Márquez

Recurrida

v.

Estado Libre Asociado de Puerto Rico

Peticionario

CC-2013-0730

---------------------------------

Mapfre Praico Insurance Company, Reliable Financial Services, Inc.

Peticionarios

y Waldemar R. Santiago Ramos y Fulano de Tal

v.

Estado Libre Asociado de Puerto Rico

Recurrido

CC-2013-1077

RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de noviembre de 2015.

Luego de reevaluar los casos consolidados de epígrafe, se ordena la desconsolidación de los recursos CC-2012-0767 <u>Banco Bilbao Vizcaya y otros v. ELA y otros</u> y CC-2013-1077 <u>Mapfre Praico Insurance Company y otros v. ELA</u>. Asimismo, se señala una vista oral para el 1 de marzo de 2016, a las 10:00 de la mañana, conforme a las Reglas 4(c) y 41 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Para esta vista oral únicamente están citados los dos casos mencionados: CC-2012-0767 <u>Banco Bilbao Vizcaya v. ELA</u> y CC-2013-1077 <u>Mapfre Praico Insurance Company y otros v. ELA</u>.

Durante esta vista, las partes deberán venir preparadas para argumentar las dos preguntas siguientes: (1) ¿Si procede utilizar el resultado favorable del imputado en la acción penal para disponer sumariamente de la acción civil de confiscación, a la luz de las disposiciones vigentes de la Ley Núm. 119-2011?; (2) ¿Si la confiscación civil de la propiedad debe condicionarse a que el Estado haya logrado una convicción criminal?

No menos de cinco días antes de la vista, cada parte deberá informar el nombre del abogado o abogada que argumentará a su favor.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto particular de conformidad, al cual se unieron los Jueces Asociados señores Rivera García y Feliberti Cintrón. El Juez Asociado señor Rivera García emitió un Voto particular de conformidad. La Jueza Presidenta señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez, el Juez Asociado señor Estrella Martínez y la Jueza Asociada Oronoz Rodríguez emitieron sus respectivos Votos particulares disidentes.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2012-0767 |

_____

| | |
|---|---|
| José Antonio Cruz López<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>Peticionarios | CC-2012-0886 |

_____

| | |
|---|---|
| Orlando Rodríguez Rodríguez<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>Peticionarios | CC-2012-0922 |

_____

| | |
|---|---|
| Reliable Financial Services, Inc. y Triple-S Propiedad<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-0541 |

_____

| | |
|---|---|
| William Morales Rosario<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-0560 |
| _____ | |
| Reynaldo Ayala Villanueva, Raymond Irizarry García<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-0572 |
| _____ | |
| María del C. Acevedo Márquez<br><br>Recurrida<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-0730 |
| _____ | |
| Mapfre Praico Insurance Company, Reliable Financial Services, Inc.<br><br>Peticionarios<br><br>y Waldemar R. Santiago Ramos y Fulano de Tal<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-1077 |

Voto particular de conformidad emitido por el Juez Asociado señor Martínez Torres a la cual se unieron el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 10 de noviembre de 2015.

Voto conforme con la Resolución que hoy se certifica en la que se señala una vista oral en los casos de epígrafe.

I.

Las vistas orales, más que la excepción, deberían ser parte integral del funcionamiento de este Tribunal cuando estén ante nuestra consideración controversias que requieran pautar Derecho y por lo tanto, resolverse mediante Opinión. Si bien estas no sustituyen un buen alegato, nos sirven para aclarar las dudas que surgen luego de estudiar con detenimiento los expedientes y el Derecho aplicable. Incluso, podemos solicitarle a las partes que nos presenten alegatos suplementarios en los que argumenten asuntos específicos que deseamos discutir en las vistas orales. En estas tenemos la oportunidad de analizar los distintos fundamentos que podrían disponer las controversias de los casos, así como las implicaciones y repercusiones que podría tener para nuestro ordenamiento jurídico adoptar uno u otro. Además, de acuerdo a la línea de preguntas en las vistas orales, tenemos la oportunidad de conocer las preocupaciones de cada miembro de este Tribunal respecto a las controversias ante nuestra consideración. En esa línea, el Juez del Tribunal Supremo federal Antonin Scalia expresó lo siguiente respecto a las vistas orales:

It isn't just an interchange between counsel and each of the individual Justices. What is going on is also to some extent an exchange of information among the Justices themselves. You hear the questions of the others and see how their minds are working, and that stimulates your own thinking. I use it, […] to give counsel his or her best shot at meeting my major difficulty with that side of the case. "Here's what's preventing me from going along with you. If you can explain why that's wrong, you have me. Stephen M. Shapiro, Questions, Answers, and Prepared Remarks, 15 Litig. 33 (1989) citando a This Honorable Court (WETA 1988) (TV broadcast).

En cuanto a la utilidad de las vistas orales para los magistrados, el expresidente del Tribunal Supremo federal William Rehnquist, expresó que si bien estas no le hacían cambiar en 180 grados su posición original al estudiar un expediente, en entre 25% y 50% de los casos, sus impresiones e ideas sobre el litigio cambiaban como consecuencia de lo discutido en la vista oral. M. H. Bright, The Power of the Spoken Word: In Defense of Oral Argument, 72 Iowa L. Rev. 35, 40 (1986-1987). Del mismo modo, el exjuez de ese Tribunal, William J. Brennan, expresó lo siguiente: "**oral argument is the absolutely indispensable ingredient of appellate advocacy** [...]. [O]ften my whole notion of what a case is about crystallizes at oral argument. This happens even though I read the briefs before oral argument [...]. Often my idea of how a case shapes up is changed by oral argument [...]. Oral argument with us is a Socratic dialogue between Justices and counsel." (Énfasis suplido) Robert L. Stern, et al., Supreme Court Practice: For Practice in the Supreme Court of the United States 671 (2002) citando a Harvard Law School Occasional Pamphlet No. 9, 22-23 (1967). Del mismo modo, la Jueza Ginsburg ha indicado que: "In over eighteen years on the

bench, I have seen few victories snatched at oral argument from a total defeat the judges had anticipated on the basis of the briefs. But I have seen several potential winners become losers **in whole or in part because of clarification elicited at argument**". (Énfasis suplido) Hon. Ruth Bader Ginsburg, Remarks on Appellate Advocacy, 50 S.C.L. Rev. 567, 570 (1999).

Esas situaciones la hemos vivido en este Tribunal. Recientemente, en SLG Pagán Colón v. Walgreens of San Patricio, Inc., 190 DPR 251 (2014), afirmamos nuestros criterios luego de escuchar a los abogados en una vista oral. Además, en PNP v. CEE y PPD II, 185 DPR 410 (2012), la celebración de la vista oral propició una negociación entre las partes que finalizó el litigio, en beneficio del interés público.

Como vemos, las vistas orales enriquecen el proceso de adjudicación. Luego de celebrarlas podemos reiterarnos en nuestra impresión original al estudiar los alegatos o, de ser el caso, cambiar nuestra postura ante las impresiones obtenidas durante el intercambio de ideas en las argumentaciones orales y en la reunión posterior del Pleno del Tribunal.

Desafortunadamente, las vistas orales no han sido parte integral de la tradición de este Tribunal. Así lo demuestran las estadísticas de los pasados treinta años. Solo una ínfima parte de los casos que hemos resuelto en los méritos han contado con el beneficio de una vista oral.

Vistas orales en el Tribunal Supremo de Puerto Rico[1]

| AÑO FISCAL | CANTIDAD DE VISTAS ORALES CELEBRADAS[2] | POR CIENTO DE LOS RECURSOS RESUELTOS EN LOS MÉRITOS EN LOS QUE SE LLEVO A CABO UNA VISTA ORAL[3] |
|---|---|---|
| 2015-2016 | – | – |
| 2014-2015 | 1[4] | 1.05%[5]    (1/95) |
| 2013-2014 | 4[6] | 3.74%[7]    (4/107) |
| 2012-2013 | 3[8] | 1.81%[9]    (3/166) |

---

[1] Esta tabla fue preparada con la información provista por la Secretaría del Tribunal Supremo.

[2] **Las vistas orales se incluyen en el año fiscal en que se certificaron las Opiniones, Sentencias o Resoluciones que dispusieron de los casos y no en el año fiscal en que se llevaron a cabo, salvo en los casos en donde se indica lo contrario.**

[3] **Se excluyen de estos cálculos los recursos relacionados a procedimientos disciplinarios contra abogados y jueces, pues, por su naturaleza, tradicionalmente no han requerido la celebración de vistas orales del Tribunal en Pleno.**

[4] Watchtower Bible v. Mun. Dorado I, 2014 TSPR 138 – la vista oral se celebró el 11 de febrero de 2014 y la Opinión del Tribunal se certificó el 18 de noviembre de 2014.

[5] Secretaría del Tribunal Supremo de Puerto Rico, Informe Estadístico Año Fiscal 2014-2015, disponible en: http://www.ramajudicial.pr/sistema/supremo/Estadisticas/2014-2015/Informe-Year-Fiscal-2014-2015.pdf (última visita 2 de noviembre de 2015)

[6] Brau, Linares v. ELA, 190 DPR 315 (2014) – la vista oral se celebró el 15 de enero de 2014 y la Opinión del Tribunal se certificó el 21 de febrero de 2014; AMPR v. Sist. Retiro Maestros IV, 190 DPR 854 (2014) – la vista oral se celebró el 26 de marzo de 2014 y la Opinión del Tribunal se certificó el 11 de abril de 2014; Muni. de San Sebastián v. QMC Telecom, 190 DPR 652 (2014) – la vista oral se celebró el 7 de mayo de 2013 y la Opinión del Tribunal se certificó el 24 de marzo de 2014; SLG Pagán-Renta v. Walgreens, 190 DPR 251 (2014) – la vista oral se celebró el 18 de junio de 2013 y la Opinión del Tribunal se certificó el 14 de febrero de 2014.

[7] Secretaría del Tribunal Supremo de Puerto Rico, Informe Estadístico Año Fiscal 2013-2014, disponible en: http://www.ramajudicial.pr/sistema/supremo/Estadisticas/INFORME-EST5ADISTICO-TRIBUNAL-SUPREMO-2013-2014.pdf (última visita 2 de noviembre de 2015).

[8] Domenech v. Integration Corp., 187 DPR 595 (2013) – la vista oral se celebró el 16 de octubre de 2012 y la Opinión del Tribunal se certificó el 3 de enero de 2013; Pueblo en interés del menor J.O., CC-2012-0309 – la vista oral se celebró el 11 de diciembre de 2012 y la Sentencia del Tribunal se certificó

| | | |
|---|---|---|
| 2011-2012 | 1[10] | 0.58%[11] (1/171) |
| 2010-2011 | 0 | 0% |
| 2009-2010 | 1[12] | 0.63%[13] (1/159) |
| 2008-2009 | 0 | 0% |
| 2007-2008 | 0 | 0% |
| 2006-2007 | 0 | 0% |
| 2005-2006 | 0 | 0% |
| 2004-2005 | 0 | 0% |
| 2003-2004 | 0 | 0% |
| 2002-2003 | 0 | 0% |
| 2001-2002 | 0 | 0% |
| 2000-2001 | 0 | 0% |
| 1999-2000 | 1[14] | 0.41%[15] (1/243) |
| 1998-1999 | 0 | 0% |
| 1997-1998 | 1[16] | 0.58%[17] (1/173) |

---

el 30 enero 2013; PIP v. ELA et al., 186 DPR 1 (2012) – la vista oral se celebró el 27 de junio de 2012 y la Opinión del Tribunal se certificó el 6 de julio de 2012.

[9] Secretaría del Tribunal Supremo de Puerto Rico, Informe Estadístico Año Fiscal 2012-2013, disponible en: http://www.ramajudicial.pr/sistema/supremo/Estadisticas/INFORM E-EST5ADISTICO-TRIBUNAL-SUPREMO-2012-2013.pdf (última visita 2 de noviembre de 2015).

[10] PNP v. CEE y PPD II, 185 DPR 410 (2012) – la vista oral se celebró el 11 de abril de 2012 y la Sentencia en la que se acogió la estipulación de las partes se certificó el 13 de abril de 2012.

[11] Secretaría del Tribunal Supremo de Puerto Rico, Informe Estadístico Año Fiscal 2011-2012, disponible en: http://www.ramajudicial.pr/sistema/supremo/Estadisticas/INFORM E-ESTADISTICO-TRIBUNAL-SUPREMO-A-FISCAL-2011-2012.pdf (última visita 2 de noviembre de 2015).

[12] Claro TV y Junta Regl. Tel. v. One Link, 179 DPR 177 (2010) – la vista oral se celebró el 26 de octubre de 2009 y la Opinión del Tribunal se certificó el 9 de junio de 2010.

[13] Tribunal Supremo, Movimiento de casos - Año Fiscal 2009 – 2010, disponible en: http://www.ramajudicial.pr/sistema/supremo/Estadisticas/movimi ento/Movimiento-de-Casos-2009-2010.pdf (última visita 2 de noviembre de 2015).

[14] PAC v. ELA II, 150 DPR 805 (2000) – la vista oral se celebró el 31 de marzo de 2000 y la Opinión del Tribunal se certificó el 25 de abril de 2000.

[15] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1999-2000, A-1.

[16] Ramirez de Ferrer v. Mari Bras, 144 DPR 141 (1997) – la vista oral se celebró el 14 de abril de 1997 y la Opinión del Tribunal se certificó el 18 de noviembre de 1997.

[17] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1997-1998, A-1.

| 1996-1997 | 1[18] | 0.5%[19]  (1/200) |
|-----------|-------|-------------------|
| 1995-1996 | 1[20] | 0.32%[21] (1/316) |
| 1994-1995 | 0     | 0%                |
| 1993-1994 | 1[22] | 0.30%[23] (1/335) |
| 1992-1993 | 3[24] | 0.65%[25] (3/459) |
| 1991-1992 | 1[26] | 0.25%[27] (1/397) |
| 1990-1991 | 1[28] | 0.31%[29] (1/321) |
| 1989-1990 | 1[30] | 0.32%[31] (1/316) |

[18] Ind. PR v. JP y AAA, 142 DPR 656 (1997) – la vista oral se celebró el 14 de marzo de 1997 y la Opinión del Tribunal se certificó el 21 de marzo de 1997.

[19] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1996-1997, Tabla A-1.

[20] Mun. San Juan v. Banco Gub. Fomento, 140 DPR 873 (1996) – la vista oral se celebró el 19 de marzo de 1996 y la Opinión del Tribunal se certificó el 21 de mayo de 1996.

[21] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1995-1996, A-1.

[22] Sánchez y Colón v. ELA I, 134 DPR 445 (1993) – la vista oral se celebró el 3 de noviembre de 1993 y la Opinión del Tribunal se certificó el 4 de noviembre de 1993.

[23] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1993-1994, Tabla A-1.

[24] Pueblo v. Arroyo Ayala, Pedro y Granados Aviles, Irma, CR-1988-110 – la vista oral se celebró el 22 de octubre de 1990 y se dispuso del caso el 26 de febrero de 1993; Maysonet v. Granda, 133 DPR 676 (1993) – la vista oral se celebró el 22 de octubre de 1990 y la Opinión del Tribunal se certifó el 23 de junio de 1993; Seabreeze Realty Corp. v. Acosta, Dana, et als. RE-1985-569 – la vista oral se celebró el 20 de octubre de 1986 y la Sentencia del Tribunal se certificó el 25 de agosto de 1992.

[25] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1992-1993, Tabla A-1.

[26]Hernández Torres v. Hernández Colón, 129 DPR 824 (1992) – la vista oral se celebró el 14 de enero de 1992 y la Opinión del Tribunal se certificó el 31 de enero de 1992.

[27] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1991-1992, A-1.

[28]Ex parte González Muñiz, 128 DPR 565 (1991) – la vista oral se celebró el 5 de noviembre de 1990 y la Opinión del Tribunal se certificó el 1ro de enero 1991.

[29] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1990-1991, A-1.

[30] Granados v. Rodríguez Estrada II, 124 DPR 593 (1989) – la vista oral se celebró el 29 de marzo de 1989 y la Opinión del Tribunal se certificó el 29 de septiembre de 1989.

[31] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1989-1990, A-1.

| 1988-1989 | 1[32] | 0.32%[33] (1/311) |
| 1987-1988 | 0 | 0% |
| 1986-1987 | 2[34] | 0.60%[35] (2/335) |
| 1985-1986 | 3[36] | 0.85%[37] (3/352) |
| 1984-1985 | 1[38] | 0.24%[39] (1/410) |

Es por eso que como en In re: Solicitud para aumentar el número de Jueces en el Tribunal Supremo, 180 DPR 54 (2010) citando a Antonio García Padilla y José Julián Álvarez González, El Tribunal Supremo de Puerto Rico: La Corte Pons, 59 Rev. Jur. UPR 185 (1990), expresamos:

---

[32] McCrillis v. Aut. Navieras de PR, 123 DPR 113 (1989) – la vista oral se celebró el 24 de febrero de 1986 y la Opinión del Tribunal se certificó el 19 de enero de 1989.

[33] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1988-1989, A-1.

[34] Guillermo Martell y otros v. Dr. Miguel Oppenheimer y otros, RE-1986-203 Cons. con RE-1986-207 – la vista oral se celebró el 17 de noviembre de 1986. No se pudo examinar el expediente para determinar la fecha en que se dispuso del caso, por lo que se incluye en el mismo año fiscal en que se celebró la vista oral; Díaz v. Navieras de PR, 118 DPR 297 (1987) - la vista oral se celebró el 18 de noviembre de 1985 y la Opinión del Tribunal se certificó el 2 de febrero de 1987.

[35] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1986-1987, A-1.

[36] Eduardo Ferrer Bolívar v. Concreto Mixto Inc., R-1985-210 – la vista oral se celebró el 21 de octubre de 1985. No se pudo examinar el expediente para determinar la fecha en que se dispuso del caso, por lo que se incluye en el mismo año fiscal en que se celebró la vista oral; Asoc. V. Villa Caparra v. Iglesia Católica, 117 DPR 346 (1986) – la vista oral se celebró el 21 de octubre de 1985 y la Opinión del Tribunal se certificó el 8 de mayo de 1986; Pueblo Int'l, Inc. v. Srio. de Justicia, 117 DPR 230 (1986) – la vista oral se celebró el 11 de abril de 1986 y la Opinión del Tribunal se certificó el 25 de abril de 1986.

[37] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1985-1986, A-1.

[38] Pueblo v. Julio César Mercado Negrón, CR-1983-37 – la vista oral se celebró el 18 de marzo de 1985. No se pudo examinar el expediente para determinar la fecha en que se dispuso del caso, por lo que se incluye en el mismo año fiscal en que se celebró la vista oral.

[39] Oficina de Administración de los Tribunales, Informe Anual de la Rama Judicial 1984-1985, A-1.

La falta de vistas orales en este Tribunal y de una reunión plenaria luego de cada vista, para votar y asignar el caso para la redacción de la ponencia mayoritaria, ha sido objeto de crítica bien fundamentada. Véanse: García Padilla y Álvarez González, _supra_, págs. 197-198; Herrero Acevedo, _supra_, págs. 1071-1072. Lo cierto es que la celebración de más vistas orales y la discusión posterior de cada caso por el Tribunal en pleno, es parte importante de un funcionamiento transparente y accesible al Pueblo desde un foro verdaderamente colegiado.

> En primer lugar, ello obliga a los jueces a hacer su estudio independiente del caso y de los alegatos de las partes antes de que circule entre ellos un borrador de opinión. De esta forma cada juez se encuentra en mejor posición para evaluar las bondades y defectos del borrador de opinión que eventualmente se prepare, para sugerir modificaciones o para producir una opinión separada con mayor celeridad.

> Segundo, y no menos importante, el método propuesto reduce el potencial de fricciones entre un grupo de personas que vienen llamadas a convivir por un largo número de años. Desde la perspectiva humana, simplemente es más sencillo y genera menos tensión interpersonal asumir una postura en un caso antes de que otro juez haya hecho un estudio más profundo y haya redactado un proyecto de opinión. García Padilla y Álvarez González, supra, pág. 197 esc. 28.

A diferencia de Puerto Rico, en los tribunales colegiados en la inmensa mayoría de las jurisdicciones de Estados Unidos la práctica cotidiana es la celebración de vistas orales. Si bien es cierto que la cantidad de vistas orales celebradas por los tribunales apelativos a nivel federal y estatal sigue una tendencia a la baja debido, entre otras razones, al aumento vertiginoso en el volumen de casos, cuando comparamos las estadísticas de esos foros con las nuestras el contraste es alarmante.

El Tribunal Supremo federal celebra vistas orales en entre setenta y ochenta casos anualmente. Igualmente, de acuerdo a un estudio de la *American Academy of Appellate Lawyers*, entre abril de 2012 y marzo de 2013, los Tribunales del Circuito de Apelaciones de Estados Unidos efectuaron vistas orales en los siguientes por cientos de los casos resueltos en los méritos: Circuito del Distrito de Columbia 60%; Primer Circuito 30%; Segundo Circuito 37%; Tercer Circuito 9%; Cuarto Circuito 13%; Quinto Circuito 21%; Sexto Circuito 21%; Séptimo Circuito 42%; Octavo Circuito 21%; Noveno Circuito 23%; Décimo Circuito 27%, y Undécimo Circuito 13%. American Academy of Appellate Lawyers, Oral Argument Task Force Report, Addendum: Analysis of the Numbers, 2015, Table 1 – Percentage of Oral Arguments U.S. Courts of Appeals 2012 Overall and by Circuit (Esta data excluye los cierres procesales, casos consolidados y casos bajo procedimientos de jurisdicción original.). El promedio de todos los Circuitos de Apelaciones para ese mismo periodo fue 22%. Íd.

A nivel estatal, un examen de los calendarios de varios tribunales supremos demuestra que la celebración de vistas orales es un asunto rutinario. Así, por ejemplo, el Tribunal Supremo de California celebra vistas orales al menos una semana al mes durante diez de los doce meses del año. Incluso, ese tribunal selecciona un día al año para celebrar vistas orales en una sesión especial en distintas universidades del estado. Supreme Court of California, Oral Argument Calendar – 2016, (disponible en: http://www.courts.ca.gov/documents/2016_SC_Calendar_0819_2015_

PublicOnly.pdf) (última visita 4 de noviembre de 2015). Lo mismo sucede en el Tribunal Supremo de Florida, donde las primeras semanas de cada mes se celebran vistas orales. Supreme Court of Florida, Yearly Schedule 2015-16, (disponible en: http://www.floridasupremecourt.org/pub_inf o/calendar.pdf) (última visita 4 de noviembre de 2015). Igualmente, el máximo foro judicial del estado de Nueva York celebra semanalmente vistas orales durante diez meses al año. State of New York - Court of Appeals, Schedule of Arguments Dates 2015, disponible en: https://www.nycourts.gov/ctapps/calendar/2015/COA2015Calendar. pdf (última vista 4 de noviembre de 2015). Exhorto a la Academia a hacer una investigación empírica más exhaustiva sobre este asunto para comparar más a fondo nuestro Tribunal con los del resto de la Nación, e incluso, con los de otros países.

De lo anterior queda claro que la práctica en el resto de Estados Unidos contrasta significativamente con las estadísticas de este Tribunal, las cuales demuestran que, en los mejores escenarios, solamente se celebraron vistas orales en entre 1 y 2 por ciento de los casos resueltos en los méritos. Además, las estadísticas históricas demuestran que durante casi una década –de 2001 a 2008- ni siquiera se celebraron vistas orales en este Tribunal. Es a partir de 2009 que se comenzó a utilizar nuevamente este valioso recurso de la práctica apelativa. No encuentro una explicación racional para justificar esas cifras tan raquíticas. El hecho de que esa haya sido la práctica en el pasado no puede ser excusa

para limitar nuestras acciones de cara al futuro. Está en nuestras manos corregir esa anomalía.

Ahora bien, tampoco pretendo que celebremos vistas orales en todos los casos que atendemos, pues muchos no lo ameritan. Así, por ejemplo, entiendo que no es necesario señalar vistas orales en casos frívolos, cuando existen precedentes claros que disponen de la controversia o cuando nos encontramos ante asuntos sencillos y rutinarios que tienen poca trascendencia y que pueden resolverse a base de principios generales de Derecho. Véase Stanley Mosk, In Defense of Oral Argument, 1 J. App. Prac. & Process 25 (1999). En cambio, en casos complejos, donde exista controversia sobre cuál fundamento es el más adecuado para disponer del caso, cuando el tribunal se encuentre marcadamente dividido y cuando se va a pautar una regla nueva de Derecho, sí debemos contar con el beneficio de una vista oral.

II.

Los principios antes expuestos aplican claramente a los casos ante nuestra consideración. La diversidad de fundamentos para disponer de las controversias planteadas y las implicaciones que conllevaría adoptar cada una de ellos, ha generado gran discusión entre los miembros de este Tribunal. Así, por ejemplo, resolver bajo un fundamento basado únicamente en la interpretación estatutaria significaría que en un futuro la Asamblea Legislativa podría variar la norma que establezcamos, mientras que hacerlo por un fundamento de origen constitucional implicaría que los representantes electos del Pueblo estarían maniatados en su proceder futuro

en cuanto a este asunto. Si le añadimos a eso el hecho de que durante el proceso de deliberación la postura de algunos miembros del Tribunal puede evolucionar, la vista oral que hoy señalamos es necesaria e importante. Por eso, cualquier postura preliminar asumida en este caso o cualquier ponencia circulada no puede considerarse determinante para resolverlo. Cuando el caso ya está decidido, la vista oral pierde su valor. Brito Díaz et al. v. Bioculture et al., 184 DPR 350 (2012) (Martínez Torres, Voto de conformidad). En ese caso, se solicitó la celebración de una vista oral en la etapa de reconsideración, es decir, cuando ya el Tribunal había tomado su determinación. En cambio, los casos de epígrafe **no están decididos**.

Además de lo anterior, la norma que pautemos en este asunto tendrá un gran alcance en nuestro ordenamiento jurídico, pues ante este Tribunal se encuentran decenas de casos en los méritos con controversias similares que aguardan por la disposición de estos casos de epígrafe antes de resolverse. Lo mismo sucede en el Tribunal de Apelaciones y en el Tribunal de Primera Instancia, donde estas controversias se plantean con gran frecuencia.

El hecho de que los casos de referencia lleven varios meses sometidos para su resolución en los méritos no crea un retraso que nos aconseje a no señalar una vista oral. Tampoco puede cuestionarse la legitimidad de la actuación del Tribunal por ordenar esta vista oral. Lo único arbitrario sería proceder sin agotar todos los mecanismos para lograr un

consenso y pautar Derecho. Eso sí nos empequeñecería como institución.

Primero, podemos resolver con rapidez luego de la vista. Nótese, por ejemplo, que en Sánchez y Colón v. ELA I, 134 DPR 445 (1993), se celebró una vista oral el día antes de que se certificara la Opinión del Tribunal y en Ind. PR v. JP y AAA, 142 DPR 656 (1997), se llevó a cabo una argumentación oral una semana antes de que se publicara la Opinión del Tribunal. Aunque en aquel momento no formaba parte de este Tribunal, puedo presumir que en esos dos casos había ponencias circulando y eso no fue impedimento para celebrar las vistas orales. Segundo, no es extraño que se celebre más de una vista oral durante la adjudicación de un caso si en medio del proceso de deliberación los jueces desean discutir interrogantes adicionales con las partes. Véase, por ejemplo, Brown v. Board of Ed. of Topeka, 347 U.S. 483 (1954). **Lo importante es contar con todo lo que nos ayude a resolver bien.** Como expresó la Jueza Presidenta señora Fiol Matta "para impartir justicia y elaborar doctrinas jurídicas adecuadas, un tribunal colegiado tiene que disponer del sosiego y del reposo intelectual necesarios, sin los cuales toda discusión entre mentes debidamente instruidas es imposible". In re Solicitud Aumentar Núm. Jueces TS, 180 DPR 54, 113 (2010) (Fiol Matta, Voto disidente) (citando a Pueblo v. Rosario, 80 DPR 318, 328 (1958). Sin lugar a dudas, la vista oral es otro mecanismo adicional en el proceso de impartir justicia y elaborar doctrinas jurídicas adecuadas.

En fin, nos encontramos ante controversias de gran envergadura que ameritan que este Tribunal celebre una vista oral antes de disponer finalmente de ellas. Estoy convencido de que lejos de ser "innecesaria y un ejercicio de futilidad", la vista oral enriquecerá el proceso de adjudicación y ayudará a afinar los fundamentos de la decisión que finalmente se certifique.

Rafael L. Martínez Torres
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2012-0767 |

-----------------------------

| | |
|---|---|
| José Antonio Cruz López<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>Peticionarios | CC-2012-0886 |

-----------------------------

| | |
|---|---|
| Orlando Rodríguez Rodríguez<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>Peticionarios | CC-2012-0922 |

-----------------------------

| | |
|---|---|
| Reliable Financial Services, Inc. y Triple-S Propiedad<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2013-0541 |

-----------------------------

| | |
|---|---|
| William Morales Rosario | |
| Recurrido | |
| v. | |
| Estado Libre Asociado de Puerto Rico | CC-2013-0560 |
| Peticionario | |
| ---------------------------- | |
| Reynaldo Ayala Villanueva, Raymond Irizarry García | |
| Recurridos | |
| v. | |
| Estado Libre Asociado de Puerto Rico | CC-2013-0572 |
| Peticionario | |
| ---------------------------- | |
| María del C. Acevedo Márquez | |
| Recurrida | |
| v. | |
| Estado Libre Asociado de Puerto Rico | CC-2013-0730 |
| Peticionario | |
| ---------------------------- | |
| Mapfre Praico Insurance Company, Reliable Financial Services, Inc. | |
| Peticionarios | |
| y Waldemar R. Santiago Ramos y | |
| Fulano de Tal | CC-2013-1077 |
| v. | |
| Estado Libre Asociado de Puerto Rico | |
| Recurrido | |

Voto particular de conformidad emitido por el Juez Asociado Señor RIVERA GARCÍA

En San Juan, Puerto Rico, a 10 de noviembre de 2015.

Lamentablemente, una vez más nuestra ciudadanía tiene la oportunidad de presenciar que, en ocasiones, el privilegio de servir al País desde este Máximo Foro lo reciben personas que simple y sencillamente no cuentan con el temperamento judicial necesario. Así, y como reflejo característico de esa carencia, algunos miembros de esta Curia toman las diferencias de criterio *en un asunto estrictamente interlocutorio* – típicas de un cuerpo colegiado como este Tribunal Supremo – para emitir expresiones enmarcadas en el insulto e insinuaciones infundadas.

Ahora bien, más allá de tales sinsentidos y erráticos procederes, intereso expresar mi conformidad con la Resolución que antecede porque entiendo que la celebración de una vista oral representa una oportunidad importante y necesaria para indagar sobre varios aspectos de la controversia ante nuestra consideración que las partes no discuten a profundidad en sus respectivos alegatos y demás comparecencias. Máxime cuando, al momento, no existe entre los miembros de este Tribunal un criterio mayoritario sobre la resolución particular o los fundamentos que sustenten la disposición de los innumerables casos que

tenemos pendiente de solución que plantean, en esencia, la misma controversia.[40]

En ese sentido, me veo precisado a emitir unas breves expresiones dirigidas, principalmente, a contextualizar la determinación que como cuerpo colegiado hemos tomado de celebrar una vista oral. En ello, me interesan particularmente dos asuntos. *Primero*, ofrecer a los lectores una perspectiva clara y concisa sobre el cuadro fáctico que presenta los casos, la controversia que este Tribunal debe atender y los argumentos que hasta el momento han presentado cada una de las partes. *Segundo*, brindar una relación específica sobre cuál ha sido el trámite interno que los casos consolidados han recibido desde su presentación ante esta Curia, conforme a las disposiciones de nuestro Reglamento.

## I

Respecto al primer punto, los casos ante nuestra consideración se producen, en términos generales, en el siguiente marco. El Estado confisca una propiedad que fue presuntamente utilizada en violación a un estatuto confiscatorio. A su vez, presenta cargos criminales en contra de la persona que poseía la propiedad por los mismos hechos que dieron base a su confiscación. No obstante, los cargos criminales son desestimados o

---

[40] Además de los ocho casos de epígrafe, todos y todas los miembros de este Tribunal tenemos, al menos, dos casos adicionales asignados en los méritos que presentan la misma controversia.

archivados *en alguna etapa anterior al juicio*. En ese escenario, surge la siguiente interrogante: ¿procede utilizar la determinación penal favorable del imputado para disponer de la acción civil de confiscación? Es decir, ¿deben los tribunales condicionar la confiscación civil de la propiedad a que el Estado haya logrado una convicción a nivel penal?

Al día de hoy, y a raíz de la aprobación de la Ley Uniforme de Confiscaciones de 2011, no existe una respuesta clara y uniforme para tales interrogantes.[41] Por una parte, los demandantes en la acción civil de impugnación de confiscación sostienen que tales controversias deben resolverse conforme a la normativa adoptada por este Tribunal bajo las disposiciones de la derogada Ley Uniforme de Confiscaciones de 1988.[42] Siendo así, arguyen que aún bajo las disposiciones de la Ley Uniforme de Confiscaciones de 2011, el proceso de confiscación tiene que ser anulado una vez la persona imputada de delito obtiene un resultado favorable a nivel penal. Lo contrario, según alegan, infringiría su derecho constitucional (1) a un debido proceso de ley; (2) a no ser juzgado dos veces por el mismo delito y; (3) a no perder su propiedad para uso público sin justa compensación.

---

[41] Ley Núm. 119-2011, según enmendada, conocida como "Ley Uniforme de Confiscaciones de 2011". (34 LPRA secs. 1724-1724w).

[42] Ley Núm. 93 de 13 de julio de 1988, según enmendada, conocida como "Ley Uniforme de Confiscaciones de 1988". (34 LPRA ants. secs. 1723 - 1723(p)).

Por otra parte, el Estado plantea que la adopción de la nueva Ley Uniforme de Confiscaciones de 2011 conllevó un cambio en el enfoque que tradicionalmente este Tribunal y la Asamblea Legislativa le habían conferido a las confiscaciones de carácter civil. En ese sentido, alega que conforme a las nuevas disposiciones, el proceso de confiscación es uno estrictamente civil dirigido contra los bienes y completamente independiente de cualquier otro proceso que se pueda llevar contra el dueño o el poseedor de los bienes. [43] De esta manera, sostiene que la jurisprudencia emitida por este Tribunal bajo la ley anterior es inaplicable a los presentes casos en cuanto a la doctrina de impedimento colateral por sentencia, en la medida que esta se utilizó en el pasado para condicionar la continuación del proceso civil de confiscación a lo sucedido en la esfera penal.

Por lo tanto, el Estado sostiene que los tribunales no deben adjudicar sumariamente las demandas de impugnación de confiscación basados exclusivamente en el resultado favorable obtenido por el imputado en el proceso penal. Principalmente, cuando ello implica, desde su perspectiva, ignorar la presunción de legalidad y corrección que establece la Ley Uniforme de Confiscaciones de 2011, según la cual le corresponde al demandante en la

---

[43] Véase, Art. 2, 8 y 15 de la Ley Uniforme de Confiscaciones de 2011. (34 LPRA secs. 1724, 1724e y 1724l, respectivamente).

causa civil de impugnación el peso de la prueba para derrotar la legalidad de la confiscación.[44]

En consideración a ambas posiciones, en los pasados tres años hemos notado una marcada división entre todos nuestros magistrados que ha dado paso a múltiples dictámines contradictorios al disponer de las cientos de demandas de impugnación de confiscación que al momento han atendido y que presentan, en esencia, el mismo cuadro fáctico descrito anteriormente. Así, por un lado hay tribunales que, conforme a la posición de los demandantes, han resuelto que una vez recae un dictamen favorable en el proceso penal por los mismos hechos que originaron la confiscación procede aplicar la doctrina de impedimento colateral por sentencia y declarar con lugar la demanda de impugnación de confiscación mediante el mecanismo sumario.

Por otro lado, hay tribunales que, cónsono con la posición del Estado, han sostenido que la acción civil de confiscación es independiente de la acción penal que presenta el Estado por los mismos hechos que dieron paso a la confiscación, por lo que se han negado a disponer sumariamente de la demanda de impugnación y han optado por ver el caso en sus méritos para determinar si, en efecto, la propiedad fue utilizada en violación de un estatuto confiscatorio. La situación no es muy distinta en nuestro Tribunal de Apelaciones, en el cual los distintos paneles se encuentran divididos respecto a la correcta resolución

---

[44] Véase, Art. 15 de la Ley Uniforme Confiscaciones de 2011, <u>supra</u>.

de tales casos. Así las cosas, es evidente que existe una disparidad en las sentencias que los foros recurrentes están emitiendo, lo cual hace imperativo que este Tribunal disponga de una norma clara y uniforme.

## II

En lo que respecta a los casos de epígrafe que plantean la referida controversia y su correspondiente trámite, notamos que el 25 de enero de 2013 acogimos el primer recurso, siendo este el CC-2012-0767, *Banco Bilbao Vizcaya v. ELA.*[45] En esa misma fecha, expedimos, además, el caso CC-2012-0886, *José Antonio Cruz López v. ELA.*[46] Posteriormente, el 22 de febrero de 2013 expedimos el recurso CC-2012-0922, *Orlando Rodríguez Rodríguez v. ELA* y el 25 de octubre de 2013 acogimos la petición de *certiorari* en el caso CC-2013-0541, *Reliable Financial Services, Inc. y Triple-S Propiedad v. ELA*. Mientras que el 22 de noviembre de 2013 expedimos el CC-2013-0572, *Reynaldo Ayala Villanueva y otros v. ELA* y el 13 de diciembre de 2013 el recurso CC-2013-0730, *María del C. Acevedo Márquez v. ELA.* Finalmente, el 14 de febrero de 2014, aceptamos revisar las determinaciones

---

[45] Este recurso fue denegado originalmente mediante una Resolución emitida el 29 de noviembre de 2012, en la cual el Juez Asociado señor Martínez Torres hizo constar que hubiese expedido el recurso solicitado para auscultar el planteamiento del Procurador General de que en este caso es inaplicable la doctrina de impedimento colateral por sentencia porque el proceso penal se desestimó por incumplimiento con los términos y no hubo una absolución en los méritos. Véase, Resolución de 29 de noviembre de 2012.

[46] En esa ocasión, el Juez Asociado señor Estrella Martínez hizo constar que declararía no ha lugar la petición de *certiorari*, mientras que la compañera Juez Asociada Rodríguez Rodríguez no intervino. Véase, Resolución de 25 de enero de 2013.

correspondientes en el caso CC-2013-1077, *Mapfre Praico Insurance Company y otros v. ELA* y eventualmente expedimos en reconsideración el caso CC-2013-560, *William Morales Rosario v. ELA*.[47]

Entre el 3 de marzo de 2013 hasta el 29 de julio de 2014, tanto el Estado como las partes demandantes en la acción civil presentaron sus respectivos alegatos en cada uno de los casos, conforme a los incisos (a) y (b) de la Regla 21 de nuestro Reglamento.[48] Por lo tanto, no fue hasta el 6 de agosto de 2014 que *todos* los casos quedaron sometidos a la consideración del Tribunal y listos para su detenida evaluación y disposición. Fue en ese momento – un año y siete meses posteriores a la expedición del primer recurso – que los casos en su totalidad pasaron de Secretaría al despacho del Juez o Jueza a quien se le asignó el caso en sus méritos y quien tenía a partir de entonces un término de un año para circular un borrador de ponencia para la consideración de los demás miembros de este Tribunal.[49]

Conforme a ese proceso y en fiel cumplimiento con las disposiciones de nuestro Reglamento, el borrador de

---

[47] En lo que respecta al caso CC-2013-560, este fue denegado originalmente por la Sala de Despacho compuesta por la Juez Asociada señora Rodríguez Rodríguez, como su Presidenta, y los Jueces Asociados señores Feliberti Cintrón y Estrella Martínez. En esa ocasión, la Juez Asociada señora Rodríguez Rodríguez hizo constar que disentía de sus compañeros Jueces Asociados y en su lugar expediría el recurso solicitado. Véase, Resolución del 11 de febrero de 2013.

[48] Regla 21(a)(b) del Reglamento del Tribunal Supremo de Puerto Rico. (4 LPRA Ap. XXI-B, Reglas 21(a) y 21(b)).

[49] Esto conforme a la Regla 5(a) del Reglamento del Tribunal Supremo. (4 LPRA Ap. XXI-B, Regla 5(a)).

opinión que disponía de los ocho casos consolidados fue circulado el 11 de febrero de 2015, apenas seis meses después de su perfeccionamiento y designación. Siendo así, el borrador de opinión estuvo bajo la evaluación de todos los Jueces y Juezas hasta el 13 de marzo de 2015 y a esa fecha debíamos informar cuál sería nuestra votación. [50] Llegada esa fecha, cuatro miembros de este Tribunal se acogieron al término reglamentario. En otros términos, cuatro Jueces solicitaron treinta días adicionales para evaluar la ponencia y los expedientes de los casos en su totalidad. Por lo tanto, estos quedaron ante la evaluación de esos cuatro Jueces por un término adicional de ciento veinte días. [51]

Luego de todo este trámite y que cada uno de los Jueces y Juezas expresara su voto, el Tribunal no alcanzó una opinión mayoritaria. Ante ese panorama, no hay duda de que una *alternativa* era certificar las sentencias correspondientes para confirmar los dictámenes que el Tribunal de Apelaciones hubiese emitido en cada caso, ya que no había una determinación en sí del Tribunal Supremo. En esta, cada uno de los compañeros y compañeras expresarían entonces sus criterios sobre el particular.

Ahora bien, contrario a esa alternativa que no hubiese resuelto en nada la incertidumbre e inconsistencia que la controversia ante nuestra consideración está

---

[50] Véase Regla 5(b) del Reglamento del Tribunal Supremo, <u>supra</u>.

[51] Íd.

provocando en nuestros Tribunales de Primera Instancia y en el Tribunal de Apelaciones, la mayoría de los miembros de este Tribunal optó por mantener los casos en trámite y ordenar la celebración de una vista oral, según autoriza nuestro Reglamento.[52] Así, la mayoría del Tribunal entendió necesario agotar todos los mecanismos disponibles a nuestro alcance para auscultar la posibilidad de lograr un consenso entre todos, o al menos la mayoría de los miembros de este Tribunal, para pautar el derecho aplicable en casos como los presentes, de manera que nuestros tribunales finalmente cuenten con una norma clara y uniforme.

En ese ánimo, y como mencionara en la introducción del presente Voto, la vista oral nos brinda una oportunidad única para indagar sobre ciertos aspectos circundantes a la controversia principal que no surgen, o quizás no en el detalle que amerita, de los escritos de las partes y sobre los cuales evidentemente existe una marcada división entre todos nosotros. Así, por ejemplo, podremos escuchar la posición de los demandantes y del Estado sobre las presuntas implicaciones constitucionales que algunos plantean predisponen la solución de estos casos y sobre aquellas otras interpretaciones que sostienen que procede una simple norma sustentada en un fundamento estrictamente estatutario.

---

[52] Véase Regla 4(b) del Reglamento del Tribunal Supremo de Puerto Rico, supra.

No hay duda que luego de estudiar los ocho casos consolidados todos tenemos una *inclinación* hacia una posición u otra, mas ello no nos debe llevar a descartar de plano la celebración de una vista oral que podría enriquecer la decisión que en su día emitamos y que podría, incluso, llevar a alguno de nosotros a cambiar de criterio o simplemente a reafirmar la inclinación que tuvimos desde un principio. En ese sentido, honestamente no puedo comprender cómo cuatro compañeros y compañeras insisten en un curso de acción que fue rechazado por la mayoría del Tribunal y fallan así en ver las virtudes de celebrar una vista oral. Valga recordar que como miembros de un Tribunal colegiado debemos liberarnos de ese excesivo afán de exaltar nuestras posiciones individuales como verdades únicas e inquebrantables que no admiten argumento en contrario.

Ese mismo afán no nos debe llevar a descartar el escenario práctico en ausencia del escenario ideal. Tal vez, lo *ideal* hubiese sido celebrar una vista oral *previo* a la formulación de un borrador de ponencia o celebrar la misma lo más pronto posible, de manera que podamos disponer de los casos con prontitud. Sin embargo, aquí hay dos puntos importantes que debemos tomar en cuenta. En primer lugar, la vista no se celebró como paso previo porque ninguna de las partes así lo propuso. En segundo lugar, se escogió la fecha del 1 de marzo de 2016 porque la mayoría así lo decidió conforme a sus calendarios y por

el hecho de que **ninguno** de los compañeros y compañeras que hoy expresan su inconformidad presentaron a la consideración del Pleno otra fecha en la alternativa.

Ciertamente, existe la posibilidad de que aun luego de celebrada la vista oral, el Tribunal no alcance un criterio mayoritario o bien podría ocurrir que la Asamblea Legislativa termine aprobando el Proyecto de la Cámara 1433 que convertiría toda esta controversia en académica.[53] Ahora, esos son escenarios que debemos considerar en su momento, sin obviar la realidad a la que nos enfrentamos en el presente; realidad que parecen ignorar los distinguidos compañeros y compañeras en sus respectivos votos disidentes.

En fin, al examinar las expresiones infundadas que contienen los votos disidentes, valga evocar la frase célebre del Dr. Samuel Johnson: "el lenguaje es el vestido de los pensamientos".[54] En reconocimiento de lo que antecede, expreso mi voto conformidad con la Resolución emitida.

Edgardo Rivera García
Juez Asociado

---

[53] El Proyecto de la Cámara 1433 tiene como objetivo "introducir enmiendas técnicas al artículo 15 de la Ley 119-2011, según enmendada, conocida como 'Ley Uniforme de Confiscaciones de 2011', a los fines de aclarar que cuando la acción penal resulte en una absolución, o el imputado resulte exonerado o si la posibilidad que tiene el Estado para encausar al imputado de delito se extingue, se aplicará la doctrina de cosa juzgada y de impedimento colateral por sentencia en todo caso de confiscación relacionado a los mismos hechos". Actualmente, se encuentra pendiente de aprobación en el Senado de Puerto Rico.

[54] Para una biografía completa de la vida del Dr. Samuel Johnson, véase, J. Boswell, La vida de Samuel Johnson, Ed. Espasa, 2007, traducción de C. Santamaría López.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, *et al.*<br>        Recurridos | *Certiorari* |
| v. | Núm. CC-2012-0767 |
| Estado Libre Asociado de Puerto Rico<br>        Peticionario | |
| ------------------------------- | Consolidado con |
| José Antonio Cruz López<br>        Recurrido | |
| v. | |
| Estado Libre Asociado de Puerto Rico, *et al.*<br>        Peticionarios | CC-2012-0886 |
| ------------------------------- | |
| Orlando Rodríguez Rodríguez<br>        Recurrido | |
| v. | |
| Estado Libre Asociado de Puerto Rico, *et al.*<br>        Peticionarios | CC-2012-0922 |
| ------------------------------- | |
| Reliable Financial Services, Inc. y Triple-S Propiedad<br>        Recurridos | |
| v. | |
| Estado Libre Asociado de Puerto Rico<br>        Peticionario | CC-2013-0541 |
| ------------------------------- | |
| William Morales Rosario<br>        Recurrido | |
| v. | |
| Estado Libre Asociado de Puerto Rico<br>        Peticionario | CC-2013-0560 |

| | |
|---|---|
| Reynaldo Ayala Villanueva, Raymond Irizarry García<br>        Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br>        Peticionario<br>----------------------------<br>María del C. Acevedo Márquez<br>        Recurrida<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br>        Peticionario<br>----------------------------<br>Mapfre Praico Insurance Company, *et al.*<br>        Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br>        Recurridos | CC-2013-0572<br><br><br><br><br><br><br>CC-2013-0730<br><br><br><br><br><br>CC-2013-1077 |

Voto particular disidente de emitido por la Jueza Presidenta SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 10 de noviembre de 2015.

En la Resolución que hoy se certifica, la mayoría de los jueces y juezas ordena la celebración de una vista oral para atender dos preguntas de estricto derecho sobre las cuales, al día de hoy, se han circulado varias ponencias que recogen el análisis jurídico y las conclusiones de todos los miembros del Tribunal sobre

este asunto. Este curso de acción que hoy se ordena posterga innecesaria e injustificadamente la disposición de los casos que nos ocupan y no responde a los fundamentos de la Regla 4(c) del Reglamento de este Tribunal, que regula lo relativo a la celebración de una vista oral.[55]

Como señala la Regla 4(c) de nuestro Reglamento, tenemos la potestad para ordenar, *motu proprio* o a solicitud de parte, que se celebren vistas orales en los casos ante nuestra consideración.[56] Estas vistas pueden servir para aclarar importantes dudas que tengan los miembros del Tribunal sobre el caso por adjudicar y arrojar luz en torno a asuntos que no estén claros y dificulten la toma de una decisión final.

Sin embargo, las vistas orales pierden toda utilidad cuando ya los miembros del Tribunal tienen sus criterios formados y están claras las posiciones de cada uno de ellos y ellas. Así lo reconocimos en el 1976, cuando nos expresamos sobre las bondades de las enmiendas introducidas al Reglamento del Tribunal Supremo de 1963, que suprimía la necesidad de vistas orales automáticas en las apelaciones presentadas ante este Foro. En esa ocasión, en <u>Pueblo v. Flores Rosa</u>, puntualizamos en la poca utilidad de los argumentos orales, "salvo en algunos

---

[55] 4 LPRA Ap. XXI-B, Regla 4(c).

casos en que una vez recibidos los alegatos de las partes, persiste un área de penumbra digna de ser analizada y expresada mediante argumento oral de los litigantes".[57]

Ese no es el escenario que tenemos ante nuestra consideración. En el presente caso, los argumentos de las partes han sido repetidos una y otra vez en los alegatos de cada uno de los casos consolidados. Más aun, nuestro proceso deliberativo ha llegado a tal punto que los miembros de este Tribunal han evaluado, discutido y expresado por escrito sus posturas sobre la controversia de autos y estos escritos revelan un criterio mayoritario en cuanto a la disposición del caso, aunque difieren en sus fundamentos.

Según expresó el Juez Asociado señor Martínez Torres en Brito Díaz v. Bioculture Puerto Rico, Inc., "[l]os beneficios de una vista oral para ilustrar al Tribunal y esclarecer la controversia son indudables. **Sin embargo, su valor se desvanece después que el Tribunal decidió.**"[58] En este caso, que no quepa duda, el Tribunal ya decidió. Procede entonces hacer lo que desde 1980 se acordó para situaciones en las que hay mayoría en cuanto a confirmar o revocar, pero ninguna ponencia tiene votos suficientes

---

[56] Íd.

[57] Pueblo v. Flores Rosa, 105 DPR 479, 483 (1976) (*énfasis en el original*).

[58] Brito Díaz v. Bioculture Puerto Rico, Inc., 184 DPR 350, 355 (2012).

para ser opinión del Tribunal. En aquel entonces, el Juez Presidente José Trías Monge explicó al Secretario General de este Tribunal, Lcdo. Ernesto L. Chiesa, que "la norma aquí debe ser **emitir una sentencia en la que se relaten los hechos del caso, los planteamientos de las partes y, finalmente, se exprese el dictamen del Tribunal**".[59]

Durante la consideración de los méritos de los casos consolidados, tuvimos la oportunidad de evaluar la ponencia que se preparó y se circuló al Pleno como proyecto de Opinión de este Tribunal. Cada una de las Juezas y los Jueces tuvimos el tiempo dispuesto por nuestro reglamento para votar, hacer sugerencias y para acogernos al término dispuesto por las reglas para expresar nuestros criterios por escrito.[60] En vista de ello, lo procedente era certificar la decisión de la mayoría de los miembros de este Tribunal, por divididos que fuesen los fundamentos.

La celebración de la vista oral en este caso significa reiniciar todo el trámite que han seguido los casos consolidados ante este Tribunal desde que quedaron sometidos para adjudicación hace poco más de un año. Lo anterior queda evidenciado en las propias preguntas que formula el Tribunal

---

[59] *Véase*, Comunicación del Juez Presidente señor José Trías Monge al licenciado Ernesto L. Chiesa del 11 de mayo de 1980, en la pág. 2 (*énfasis suplido*).

en la Resolución que hoy se certifica. Estas preguntas giran en torno a asuntos de estricto derecho para cuya evaluación no hace falta la celebración de una vista oral.[61] Basta examinar los alegatos de las partes para ver contestadas las preguntas cuyas respuestas supuestamente se obtendrán en la vista ordenada.

Para la mayoría, en este caso, aparentemente, el tiempo no apremia. Según indica la Resolución, la vista se ha señalado para el 1 de marzo del año entrante. La Regla 5(a) de nuestro Reglamento dispone que una vez concluya la vista oral, el pleno del tribunal debe reunirse en conferencia el mismo día para discutir el caso en los méritos. Allí, cada juez y jueza deberá presentar su posición y el caso se asignará al juez o jueza cuya propuesta obtenga la mayoría.[62] En ese momento, comenzará nuevamente el proceso de confeccionar y circular la propuesta de opinión mayoritaria y los plazos que nuestro Reglamento provee para votar o acogerse a término, que pueden sumar meses adicionales.

Resulta evidente que posponer la decisión del presente caso a los fines de celebrar una vista oral no solo atenta contra el principio de economía procesal, sino

---

[60] 4 LPRA Ap. XXI-B, Regla 5(b).
[61] Inclusive, estas preguntas han sido anteriormente atendidas y resueltas por este Tribunal. *Véase*, Coop. Seg. Mult. v. ELA, 180 DPR 655 (2011).

[62] 4 LPRA Ap. XXI-B, Regla 5(a).

que es un ejercicio fútil, cuyo único resultado será el atraso inexplicable y exagerado de la resolución de los casos consolidados. Por esa razón, disiento del curso de acción que la mayoría del Tribunal escoge.


Liana Fiol Matta
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., *et als.*, Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y Otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | CC-2012-0767 |
| _____ | |
| José Antonio Cruz López<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, *et als.*<br><br>Peticionarios | CC-2012-0886 |
| _____ | |
| Orlando Rodríguez Rodríguez<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, *et als.*<br><br>Peticionarios | CC-2012-0922 |
| _____ | |
| Reliable Financial Services, Inc. y Triple-S Propiedad<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico | CC-2013-0541 |

Peticionario
William Morales Rosario

Recurrido

v.                          CC-2013-0560

Estado Libre Asociado de Puerto Rico

Peticionario
_____

Reynaldo Ayala Villanueva, Raymond Irizarry García

Recurridos

v.                          CC-2013-0572

Estado Libre Asociado de Puerto Rico

Peticionario
_____

María del C. Acevedo Márquez

Recurrida

v.                          CC-2013-0730

Estado Libre Asociado de Puerto Rico

Peticionario
_____

Mapfre Praico Insurance Company, Reliable Financial Services, Inc.

Peticionarios

Y Waldemar R. Santiago Ramos y Fulano de Tal

v.                          CC-2013-1077

Estado Libre Asociado de Puerto Rico

Recurrido

Voto Particular Disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 10 de noviembre de 2015

> "Es inaceptable que algunos miembros de esta Curia continúen con la vieja práctica de mantener aguantado los recursos ante nuestra consideración sin razón válida alguna, exponiendo a las partes a dilaciones y gastos innecesarios".[63]

Una vez más, me veo obligada a disentir, *vehementemente*, del curso de acción que toma una mayoría de este Tribunal. Con la certificación de la resolución que precede no sólo se provee para la celebración de una vista oral, a todas luces innecesaria, sino que se consuma la ufanía de un poder ejercido desde la arbitrariedad, cuyo ejercicio, además, socava la maltrecha legitimidad de este Foro. Tristemente, "si se tratara únicamente de quién tiene más votos ahí acabaría la discusión". Hiram Meléndez Juarbe, *Crisis política y el Tribunal Supremo*, en *Derecho al Derecho: Intersticios y grietas del poder judicial en Puerto Rico* 141 (Érika Fontánez Torres & Hiram Meléndez Juarbe, eds.) (2012) Pero dado que la discusión no finaliza *ahí*, y que lo que está en juego es la autoridad y la legitimidad de este

---

[63] *Sara Cortés, et al. v. Wesleyan Academy, et al.*, 2015 T.S.P.R. 40 (Rivera García, J., Voto Particular de Conformidad).

Foro, suscribo este Voto Particular Disidente, puntualizando el azaroso trámite que subyace la desacertada determinación que una mayoría de este Tribunal hoy avala.

I

El 29 de agosto de 2012, hace más de tres años, se presentó ante este Tribunal un recurso de *certiorari* en el caso *Banco Bilbao Vizcaya et al. v. E.L.A.*, CC-2012-0767. En éste, se planteaba la controversia que las preguntas certificadas en la resolución que antecede, de manera un tanto redundante, recogen, a saber: "¿Si procede utilizar el resultado favorable del imputado en la acción penal para disponer sumariamente de la acción civil de confiscación, a la luz de las disposiciones vigentes de la Ley Núm. 119-2011? ¿Si la confiscación civil de la propiedad debe condicionarse a que el Estado haya logrado una convicción criminal?". Véase *Resolución, ante.* Así las cosas, el 25 de enero de 2013, en reconsideración, este Tribunal expidió el recurso en cuestión.

Poco después, sin embargo, en atención al alud de casos que planteaban controversias análogas, este Tribunal dispuso para la consolidación del referido recurso con otros que versaban, esencialmente, sobre el mismo asunto. Valga señalar que el último de estos recursos, *Mapfre Praico Ins. Co. et al. v. E.L.A.*, CC-2013-1077, fue presentado el 6 de diciembre de 2013 y

expedido el 3 de febrero de 2014.[64] Como se dijo, los ocho recursos de epígrafe versan sobre *lo mismo,* esto es: la relación entre un proceso de confiscación con el encausamiento penal concomitante a éste, en el contexto

---

[64] Con tal de ilustrar cabalmente la tramitación de los recursos pertinentes, conviene consignar las fechas en que éstos fueron presentados, expedidos, consolidados y quedaron sometidos para adjudicación en los méritos.

1. *Banco Bilbao Vizcaya et al. v. E.L.A.,* CC-2012-0767: sometido el 29 de agosto de 2012; expedido el 25 de enero de 2013; consolidado el 25 de octubre de 2013, y **sometido para adjudicación el 9 de mayo de 2014.**
2. *José Antonio Cruz López v. E.L.A. et al.,* CC-2012-0886: presentado el 1 de octubre de 2012; expedido el 25 de enero de 2013; consolidado el 25 de octubre de 2013, y **sometido para adjudicación el 9 de mayo de 2014.**
3. *Orlando Rodríguez Rodríguez v. E.L.A. et al.,* CC-2012-0922: presentado el 15 de octubre de 2012; expedido el 22 de febrero de 2013; consolidado el 25 de octubre de 2013, y **sometido para adjudicación el 9 de mayo de 2014.**
4. *Reliable Financial Services, Inc., et al. v. E.L.A.,* CC-2013-0541: presentado el 2 de julio de 2013; expedido el 25 de octubre de 2013; consolidado el 28 de febrero de 2014, y **sometido para adjudicación el 11 de agosto de 2014.**
5. *William Morales Rosario v. E.L.A.,* CC-2013-0560: presentado el 8 de Julio de 2013; expedido el 28 de febrero de 2014 (en reconsideración); consolidado el 25 de agosto de 2014, y **sometido para adjudicación el 11 de agosto de 2014.**
6. *Reynaldo Ayala Villanueva et al. v. E.L.A.,* CC-2013-0572: presentado el 10 de julio de 2013; expedido el 22 de noviembre de 2013; consolidado con los demás casos el 25 de agosto de 2014, y **sometido para adjudicación el 11 de agosto de 2014.**
7. *María del C. Acevedo Márquez v. E.L.A.,* CC-2013-0730: presentado el 30 de agosto de 2013; expedido y consolidado el 13 de diciembre de 2013 (en reconsideración), y **sometido para adjudicación el 11 de agosto de 2014.**
8. *Mapfre Praico Ins. Co. et al. v. E.L.A.,* CC-2013-1077: presentado el 6 de diciembre de 2013; expedido y consolidado el 3 de febrero de 2014, y **sometido para adjudicación el 11 de agosto de 2014.**

de una demanda de impugnación de aquél al amparo de la Ley Núm. 119 de 12 de julio de 2011, *Ley uniforme de confiscaciones de 2011*, 34 L.P.R.A. secs. 1724-1724w.[65] Se colige, pues, que este Tribunal tuvo ante sí la controversia medular que suscitan los casos consolidados desde hace poco más de tres años. Ello, además, supone que durante el transcurso de esos años este Tribunal examinó innúmeros alegatos sobre el particular, los cuales le permitieron a sus distintos miembros reflexionar sobre las cuestiones jurídicas en cuestión. Es decir, la controversia para la cual hoy una mayoría de este Tribunal inopinadamente convoca una vista oral ha sido harto argumentada por las partes durante más de un trienio. Ante esto, habría que preguntarse, ¿qué razones, entonces, justifican la celebración de una vista a estas alturas? Ensayar una contestación a tal interrogante, como mínimo, requiere hacer un breve recuento del trámite que han seguido estos casos consolidados.

II

---

[65] De otra parte, resulta imperativo señalar que, al margen de los casos de epígrafe, ante este Tribunal penden un sinnúmero de casos que presentan controversias análogas, por no decir idénticas. Por tanto, la dilación de los recursos en cuestión surte efectos colaterales sobre la oportuna y efectiva disposición de otros. Esto, además, incrementa significativamente la carga de trabajo de este Tribunal, la cual bien puede entorpecer la disposición de recursos no relacionados con la controversia que nos atañe.

El Juez Asociado que tuvo a su cargo los casos consolidados que nos ocupan circuló su borrador de ponencia el 11 de febrero de 2015. Circulada ésta, la mayoría de los miembros de este Tribunal se acogieron al término reglamentario, con tal de poder estudiar la misma con rigor y emitir el voto correspondiente. Así, transcurridos los términos, quedó claro que **el saldo de votos no favorecía la postura del Juez ponente.** "Votos", puesto que, en efecto, una mayoría de este Tribunal había emitido su voto en torno a la ponencia circulada. Esto es, había evaluado la controversia en los méritos y asumido una postura respecto a ésta. Ante esta situación, la ponencia circulada no podía certificarse como opinión del Tribunal, habida cuenta de que no contaba con los votos suficientes. Procedía, entonces, en rigor, que el Juez Asociado ponente devolviera el expediente a la Jueza Presidenta para que ésta lo asignara a uno de los jueces cuya postura fue mayoritaria. Éste, a su vez, debía emitir un dictamen que reflejara el criterio mayoritario.

Sin embargo, sorpresivamente, en la tarde de ese mismo día, se circuló un memorando en virtud del cual el Juez ponente retiraba su borrador y proponía la celebración de una vista oral. Ello, cuando al menos ocho de los miembros de este Tribunal ya habían emitido su voto respecto a la ponencia en cuestión. Es decir, la propuesta del Juez ponente no solamente es contraria al

procedimiento que se ha seguido en esta Curia desde siempre, sino que, además, resulta extravagante, puesto que una mayoría de este Tribunal ya ha reflexionado y asumido una postura respecto a la controversia que suscitan los casos de epígrafe. Dicho lo anterior, habría que volver sobre la interrogante antes señalada, *¿qué razones justifican la celebración de una vista oral a estas alturas, cuando la mayoría de los integrantes de este Foro ya ha pasado juicio sobre la controversia que nos ocupa?* A modo de contestación, baste con señalar que las actuaciones de esa mayoría son tanto más elocuentes que cualquier contestación puntual.

Así, en consideración de lo anterior, e indignada con el proceder de *esa mayoría*, disiento.

III

En cuanto a los méritos de la celebración de la vista oral, es menester señalar, de entrada, que "[l]os beneficios de . . . [ésta] para ilustrar al Tribunal y esclarecer . . . [una] controversia son indudables". *Brito Díaz v. Bioculture*, 184 D.P.R. 350, 355 (Martínez Torres, J., Voto de Conformidad). Ello, claro está, presupone que los juzgadores que se beneficiarán de la misma aún no tienen un criterio formado sobre la controversia en virtud de la cual se ha de celebrar ésta. Hoy, sin embargo, una mayoría de este Tribunal dispone para la celebración de una vista oral aun cuando

sus miembros ya han evaluado en los méritos la controversia que en ésta se pretende discutir y expresaron su postura, algunos por escrito, en cuanto a ésta. Es decir, esta vista oral no podrá "ilustrar" a este Tribunal ni "esclarecer" la controversia, dado que ésta ya fue debidamente evaluada y juzgada por los miembros de este Foro. Máxime cuando se tienen en cuenta los múltiples alegatos presentados por las partes discutiendo con rigor los méritos de la controversia.

De otra parte, es preciso destacar que, aun reconociendo el valor que bien pudieran tener las vistas orales en la adjudicación de ciertas controversias, no se debe perder de vista que el uso indiscriminado de éstas puede redundar en la dilación injustificada de los procedimientos, lo que, a su vez, puede aumentar los costos para las partes.[66] Es innegable, pues, que, dadas las circunstancias que rodean la resolución que hoy se certifica, la celebración de la vista oral que ésta

---

[66] Véase Robert J. Martineau, *The Value of Appellate Oral Argument: A Challenge to the Conventional Wisdom*, 72 Iowa L. Rev. 1, 33 (1986) ("Oral arguments can and should continue to have a significant role in the appellate process. However, unless its real purpose is understood and it is used only in those cases in which that purpose can be served, it will delay the disposition of cases and increase expenses."). Véase, también, Ruth Bader Ginsburg, *Remarks on Appellate Advocacy*, 50 S.C. L. Rev. 567, 570 (1999) ("A last word on oral argument. In my view it is in most cases a hold-the-line operation. In over eighteen years on the bench, I have seen few victories snatched at oral argument from a total defeat the judges had anticipated on the basis of the briefs.").

viabiliza, en este caso en particular, supone gastos adicionales para las partes, quienes llevan enfrascadas numerosos años en la litigación de estos casos. Es decir, la resolución que antecede desatiende las consideraciones que han de guiar a este Tribunal en la celebración de vistas orales.

Asimismo, es desconcertante la determinación de desconsolidar dos de los casos de epígrafe para la celebración de la vista en cuestión. Ante todo, ¿qué criterios utilizó la mayoría para privilegiar a estos litigantes a expensas de los demás? ¿Qué razones justifican permitir que los litigantes de los casos desconsolidados participen en una vista oral y, a la vez, negar tal oportunidad a las demás partes, quienes oportunamente presentaron ante este Tribunal recursos planteando controversias análogas? Dada la ausencia de criterios específicos o razones fundamentadas, no queda más que inferir que se trata de una determinación arbitraria cuya justificación ulterior no es más que un mero "porque sí".

Por último, llamo la atención a que la vista oral en cuestión se celebrará el 1 de marzo de 2016. Esto es, poco menos de cuatro meses desde la certificación de la resolución que antecede, y más de dos años desde que el último de los casos consolidados quedara sometido para adjudicación en los méritos, el 11 de agosto de 2014. Aun partiendo de la premisa de que la celebración de

esta vista oral fuera imperativa, cabría preguntarse ¿por qué esperar casi cuatro meses para la celebración de ésta? Al final, se trata de un ejercicio tosco del poder que no precisa razones, puesto que se sabe arbitrario. Se trata, pues, de un poder que se regodea en la complacencia de su arbitrariedad.

IV

Esta no es la primera vez que una mayoría de este Tribunal se vale de mecanismos procesales para adelantar sus objetivos o ejercer presiones indebidas en la tramitación ordinaria de los procedimientos judiciales. Es decir, la resolución que hoy avala una mayoría de este Tribunal no es más que otro capítulo en la triste historia reciente de este Foro. Sin embargo, en esta ocasión, tal proceder está revestido de matices particulares; éstos, a su vez, remiten a la atropellada e irregular tramitación de los casos de epígrafe. Como se dijo, las actuaciones de *la mayoría* son tanto o más elocuentes que cualquier constatación verbal. En consecuencia, he procurado exponer someramente los pormenores de dicho trámite con tal de contextualizar debidamente este disenso. Que no quepa duda: hoy este Tribunal, injustificada y arbitrariamente, apartándose del trámite usual, desatiende el criterio que prevaleció ya en este caso, y opta por dilatar aún más la resolución de una controversia, sin tomar en

consideración los gastos que esto conlleva para las partes y los efectos nocivos que surten las dilaciones innecesarias sobre la legitimidad de este Foro. Así, puesto que rechazo actitudes y comportamientos liliputienses de aquéllos que son incapaces de ser consecuentes con lo que predican, disiento.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., *et als.*, Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | CC-2012-767 |
| ------------------------- | Cons. |
| José Antonio Cruz López<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, *et als.*<br><br>Peticionarios | CC-2012-886 |
| ------------------------- | Cons. |
| Orlando Rodríguez Rodríguez<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, *et als.*<br><br>Peticionarios | CC-2012-922 |
| ------------------------- | Cons. |
| Reliable Financial Services, Inc. y Triple-S Propiedad<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de | CC-2013-541 |

| | |
|---|---|
| Puerto Rico<br><br>    Peticionario<br>-------------------------<br>William Morales Rosario<br><br>    Recurrido<br><br>       v. | Cons.<br><br><br><br><br>CC-2013-560 |
| Estado Libre Asociado de Puerto Rico<br><br>    Peticionario<br>-------------------------<br>Reynaldo Ayala Villanueva, Raymond Irizarry García<br><br>    Recurridos<br><br>     v. | Cons.<br><br><br><br><br>CC-2013-572 |
| Estado Libre Asociado de Puerto Rico<br><br>    Peticionario<br>-------------------------<br>María del C. Acevedo Márquez<br><br>    Recurrida<br><br>     v. | Cons.<br><br><br><br><br>CC-2013-730 |
| Estado Libre Asociado de Puerto Rico<br><br>    Peticionario<br>-------------------------<br>Mapfre Praico Insurance Company, Reliable Financial Services, Inc.<br><br>    Peticionarios<br><br>y Waldemar R. Santiago Ramos y Fulano de Tal<br><br>     v. | Cons.<br><br><br><br><br><br>CC-2013-1077 |
| Estado Libre Asociado de Puerto Rico | |

CC-2012-0767; CC-2012-0886; CC-2012-0922; CC-2013-0541;     3
CC-2013-0560; CC-2013-0572; CC-2013-0730; CC-2013-1077

| Recurrido |

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 10 de noviembre de 2015.

Desde el 2012, este Tribunal ha recibido recursos relacionados con la nueva ley de confiscaciones. Desde el 2013 hasta el presente, este Tribunal ha continuado expidiendo multiplicidad de casos de confiscaciones. En el 2014, consolidamos los casos de epígrafe. Desde ese mismo año, se encuentran perfeccionados los recursos consolidados. Durante el 2015, se han circulado varias ponencias en las que hemos expuesto nuestros respectivos criterios. Todas y todos los miembros de este Tribunal han asumido posturas al presente, por lo que no veo impedimento para que emitamos un dictamen – independientemente de cuál sea el criterio que prevalezca- ya que es imperativo emitir una directriz a los foros recurridos.

Nos encontramos ante una controversia sencilla, con precedentes claramente aplicables, los cuales la Constitución de los Estados Unidos y la de Puerto Rico exigen que no abandonemos. Sin embargo, con la consecuencia de aplazar un inminente dictamen que confirmaría el razonamiento abrumadoramente mayoritario de los paneles del Tribunal de Apelaciones, una Mayoría de este Tribunal anuncia sorpresivamente la certificación de una Resolución para desconsolidar los casos

previamente analizados y, paradójicamente, opta por regresar al principio del camino descartado y selectivamente celebrar una vista oral, nada más y nada menos que en marzo de 2016. Ello, a pesar de que no tenemos vistas orales calendarizadas para los meses de noviembre y diciembre del año en curso, ni tampoco para el primer trimestre del 2016. Consecuentemente, he promovido la celebración de vistas orales en casos que verdaderamente la ameritan y en el momento oportuno. Ahora bien, el tracto procesal, la acción de desconsolidar, la naturaleza de la controversia ante nos y la tardía celebración de la vista oral propuesta, dejan al descubierto que las motivaciones son ajenas a las virtudes de la celebración de las mismas.

En consecuencia, no me voy a prestar para un curso de acción totalmente ajeno a la celebración oportuna de una vista oral y, mucho menos, cuando tal dilación es contraria al mandato de promover soluciones justas, económicas y rápidas. Máxime cuando la acción de desconsolidación y el curso de acción adoptado atenta contra la concesión de un remedio adecuado, completo y oportuno. Transcurridos varios años de litigación ante este Tribunal, sin contar el calvario procesal ante los otros foros recurridos, no voy a ser partícipe de una dilatación procesal innecesaria y una desconsolidación onerosa, selectiva e improcedente.

Con el plan trazado por la Mayoría, las ciudadanas y los ciudadanos, al igual que las otras partes peticionarias con intereses propietarios y el Estado, incurrirán en gastos de litigación adicionales e innecesarios, para discutir dos preguntas que han sido abordadas extensamente en las comparecencias de las partes involucradas y analizadas hasta la saciedad en varias ponencias fundamentadas, que se encuentran listas para ser certificadas.

En el descargo de la responsabilidad de mis funciones, disiento del curso de acción adoptado por una Mayoría de este Tribunal y procedo a exponer las consideraciones procesales y de naturaleza sustantiva que fundamentan mi oposición a la desconsolidación y a la celebración tardía e innecesaria de una vista oral. Veamos.

I

En los casos de epígrafe, varios ciudadanos, al igual que entidades financieras y sus respectivas compañías aseguradoras (demandantes), incoaron acciones judiciales contra el Estado Libre Asociado de Puerto Rico (ELA) con el fin de impugnar la confiscación de propiedades que alegadamente se utilizaron en la comisión de delitos. Esencialmente, los demandantes presentaron sendas mociones de sentencia sumaria mediante las cuales sostuvieron que el foro judicial debía anular la confiscación por motivo del resultado favorable obtenido

por los imputados de delito en la acción penal. [67] Amparados en la vigente normativa jurídica adoptada por este Tribunal para los casos de confiscaciones civiles, los demandantes arguyeron que existía impedimento colateral por sentencia para continuar la acción civil confiscatoria como consecuencia del desenlace del procedimiento penal. Ello, toda vez que sostuvieron que al desestimarse o archivarse los cargos criminales, el Estado no pudo demostrar que se había cometido un delito, siendo éste uno de los elementos esenciales para que proceda la confiscación civil de la propiedad.

Asimismo, los demandantes plantearon que abstraer el resultado de la causa penal del procedimiento civil de confiscación lesionaría derechos constitucionales fundamentales, puesto que les privaría de su propiedad sin el debido proceso de ley y sin previa justa compensación. De igual forma, alegaron que se vulneraría la protección constitucional del acusado a no ser juzgado dos veces por el mismo delito. Finalmente, los demandantes sostuvieron que aún bajo la Ley Núm. 119-2011, *infra*, la acción civil de confiscación es de

---

[67] El resultado favorable en el proceso criminal se debía a que, en síntesis, los cargos presentados fueron desestimados o archivados por varios motivos, a saber: (1) supresión de la única evidencia incriminatoria (CC-2013-541; CC-2013-730; CC-2013-1077); (2) dictamen de no causa para acusar tanto en la etapa de vista preliminar como en la vista preliminar en alzada (CC-2013-560; CC-2013-572; CC-2013-1077); y (3) violaciones a los términos de juicio rápido (CC-2012-767; CC-2012-886; CC-2012-922).

naturaleza punitiva, por lo que deben operar todas las garantías constitucionales que cobijan a los ciudadanos.

Por su parte, el ELA se opuso a las respectivas mociones de sentencia sumaria incoadas. En síntesis, adujo que la aprobación de la Ley Núm. 119-2011 supuso un cambio de enfoque en la manera en que la Asamblea Legislativa de Puerto Rico concebía las confiscaciones civiles y en la forma en que este Tribunal ha resuelto este tipo de casos. En ese sentido, arguyó que los pronunciamientos jurisprudenciales emitidos bajo la derogada Ley de Confiscaciones del 1988, *infra*, eran inaplicables a las presentes controversias. Así, planteó que en la actualidad el proceso de confiscación civil de los bienes es uno completamente independiente de cualquier otro proceso que se lleve a cabo contra el dueño o poseedor de éstos. Por tanto, el ELA alegó que bajo el estatuto de confiscaciones vigente no cabía concluir que la doctrina de impedimento colateral por sentencia, por motivo del desenlace de la causa penal, condicionaba el proceso civil de confiscación. Para el ELA, condicionar tal proceso implicaría ignorar la presunción de legalidad y corrección que establece la Ley Núm. 199-2011 bajo la cual le corresponde al demandante en la acción de impugnación de confiscación el peso de la prueba para derrotar la legalidad de ésta.

En cuanto a los planteamientos constitucionales señalados por los demandantes, el ELA expuso que la ley

de confiscaciones contiene un proceso de impugnación que cumple con las salvaguardas del debido proceso de ley. De otra parte, planteó que el procedimiento de confiscación civil de la propiedad no activa las garantías constitucionales contra la doble exposición. De acuerdo al ELA, ese proceso es estrictamente civil por lo que no representa exposición alguna a convicción de delito, ni aumenta la pena.

Tras examinar los argumentos de las partes, los foros primarios emitieron dictámenes esencialmente similares en todos los casos.[68] Esto es, acogieron los planteamientos esgrimidos por los demandantes por lo que declararon ha lugar la impugnación de la confiscación y, por consiguiente, ordenaron la devolución de la propiedad confiscada. Presentadas oportunamente solicitudes de reconsideración por parte del ELA, éstas fueron declaradas no ha lugar.

---

[68]Excepto el caso CC-2013-1077 en el cual una entidad financiera y su compañía aseguradora (demandantes) presentaron dos mociones de sentencia sumaria, como parte de una demanda de impugnación de confiscación contra el ELA. Mediante éstas, alegaron que el foro judicial debía aplicar la doctrina de impedimento colateral por sentencia y, por ende, anular la confiscación de su propiedad. En lo pertinente, adujeron que el resultado favorable de la acción penal condicionaba la acción civil confiscatoria. Examinadas las posturas de las partes, el Tribunal de Primera Instancia denegó las solicitudes de sentencia sumaria al concluir que en estos casos la aplicación de la referida doctrina no es automática. Inconformes, los demandantes acudieron al Tribunal de Apelaciones. Visto el caso, el foro apelativo intermedio denegó la expedición del recurso de *certiorari* presentado. Ante ello, los demandantes recurrieron ante este Tribunal.

Inconforme con estas determinaciones, el ELA recurrió ante el Tribunal de Apelaciones. En esencia, el foro apelativo intermedio confirmó la determinación de los foros primarios. Por ende, avaló la impugnación de las confiscaciones efectuadas por el ELA y, en consecuencia, la devolución de la propiedad. El razonamiento del Tribunal de Apelaciones se dirigió a afirmar que al desaparecer la acción penal resultaba forzoso concluir que también se extinguió la acción confiscatoria. En otras palabras, de las determinaciones judiciales ante nos se desprende que, a juicio del foro apelativo intermedio, el proceso de confiscación civil está estrechamente ligado al resultado de la acción penal que lo origina. De esta forma, el aludido foro concluyó que el desenlace de la acción penal es relevante para dictaminar la procedencia o no de la confiscación civil de la propiedad.

En desacuerdo con el proceder del Tribunal de Apelaciones, el ELA acude ante este Tribunal. Fundamentalmente, reproduce los argumentos enunciados ante los foros recurridos. Examinados los casos, el 25 de agosto de 2014, este Tribunal emitió una Resolución mediante la cual consolidó las ocho controversias de epígrafe. Además, brindamos la oportunidad de que todas las partes involucradas se expresaran. Con el beneficio

de sus comparecencias[69] y de la discusión colegiada, se circularon varias ponencias. Sin embargo, habiendo transcurrido los términos reglamentarios para certificar las mismas y estando en posición de emitir el correspondiente dictamen, una Mayoría de este Tribunal adopta un curso de acción contrario y dilatorio.

## II

De entrada, resulta necesario reconocer que a los casos consolidados les aplica el mismo marco estatutario y jurisprudencial pertinente. Por ello, resulta incomprensible la desconsolidación selectiva y la celebración de una vista oral fragmentada y tardía. Veamos los fundamentos que derrotan ese curso de acción, porque a fin de cuentas, no debemos obviar que "el procedimiento no se debe colocar en el vacío [...] y que cada regla procesal [...] tiene un pronunciado efecto sobre la manera en que opera la ley sustantiva".[70]

En repetidas ocasiones este Tribunal ha definido la confiscación como el acto mediante el cual el Estado, por mandato de la Asamblea Legislativa y actuación del ejecutivo, ocupa e inviste para sí todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en la comisión de ciertos delitos. Doble Seis

---

[69] Solamente el Sr. José A. Cruz López, recurrido en el caso CC-2012-886, no compareció a expresar su posición ante este Tribunal.

[70] M. Cappelletti y otros, El acceso a la justicia: la tendencia en el movimiento mundial para hacer efectivos los derechos, México, Fondo de Cultura Económica, 1996, pág. 13.

Sport v. Depto. Hacienda, 190 DPR 763, 784 (2014); Rodríguez Ramos v. ELA, 174 DPR 194, 202 (2008); Del Toro Lugo v. ELA, 136 DPR 973, 980-981 (1994). En virtud de la confiscación, el Estado tiene la facultad de privar de la propiedad privada sin compensación aunque, claro está, sujeto al cumplimiento con el debido proceso de ser notificado y oído. Pueblo v. González Cortés, 95 DPR 164, 167-168 (1967). En ese sentido, realizada conforme a derecho, la confiscación constituye una excepción al mandato constitucional que impide tomar propiedad privada para fines públicos sin justa compensación. *Véase* Art. II, Sec. 9, Const. ELA, Tomo 1, ed. 2008, págs. 323-324; *véase*, además, Coop. Seg. Múlt. v. ELA, 180 DPR 655, 662-663 (2011).

Cabe resaltar que en nuestra jurisdicción se ha estatuido la autoridad del Estado de apropiarse de aquellos bienes utilizados para fines ilícitos tanto como parte del proceso penal que se lleva a cabo contra el propietario o poseedor de éstos, así como a través de una acción civil contra la cosa u objeto mismo. A tales efectos, en nuestro ordenamiento jurídico el proceso de confiscación se puede instituir bajo dos modalidades, a saber: confiscación criminal y confiscación civil.

En atención a las distinciones entre estas modalidades, se ha precisado que la confiscación criminal se realiza como parte integral de la acción *in personam* contra el alegado autor del delito en un caso criminal.

Coop. Seg. Múlt. v. ELA, *supra*, pág. 664; Del Toro Lugo v. ELA, *supra*, págs. 981-982. En este tipo de modalidad, la convicción de la persona imputada es, precisamente, el fundamento que origina la confiscación. Esto es, se impone la confiscación como pena adicional si la persona acusada resulta convicta. Como puede apreciarse, la naturaleza de esta modalidad de confiscación es punitiva y tiene el propósito de promover el interés del Estado en cuanto a que el criminal no se lucre de su actividad delictiva. Del Toro Lugo v. ELA, *supra*, pág. 982.

Por su parte, la segunda modalidad de confiscación es una acción civil mediante la cual se va directamente contra la cosa a ser confiscada, por lo que está separada procesalmente del encausamiento criminal contra el presunto autor del delito. Coop. Seg. Múlt. v. ELA, *supra*, pág. 664. Es decir, este tipo de confiscación va dirigido contra la cosa misma (*in rem*) y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con interés legal sobre ésta. Es una acción *in rem* toda vez que se imputa la utilización de la propiedad confiscada en la comisión de un delito. Del Toro Lugo v. ELA, *supra*, pág. 982. En otras palabras, el derecho del Estado de tomar posesión de la cosa surge del mal uso que se le ha dado a ésta. Suárez v. ELA, 162 DPR 43, 52 (2004) (*Per Curiam*); Del Toro Lugo v. ELA, *supra*, pág. 983.

Es menester señalar que la confiscación *in rem* se trata de una ficción jurídica a través de la cual, en cierto sentido, se culpa a la propia cosa por su participación en el delito. Por lo tanto, bajo esta modalidad se permite que el Estado vaya directamente contra la propiedad como parte de una ficción jurídica que considera que a la cosa, como medio o producto del delito, se le puede fijar responsabilidad independientemente del autor del delito. Coop. Seg. Múlt. v. ELA, *supra*, pág. 665.

Ahora bien, con respecto a los elementos pertinentes para determinar si procede una confiscación civil, reiteradamente este Tribunal ha expresado que son los siguientes: (1) existencia de prueba suficiente y preponderante de que se ha cometido un delito; y (2) existencia de un nexo entre la comisión del delito y la propiedad confiscada. Doble Seis Sport v. Depto. Hacienda, *supra*, pág. 784; Suárez v. ELA, *supra*, pág. 52; Del Toro Lugo v. ELA, *supra*, pág. 983. De esta forma, se entendía que la acción civil de confiscación procedía si el *quantum* de evidencia para establecer que se ha cometido un delito es suficiente y preponderante, y se halla un nexo entre el delito perpetrado y la propiedad confiscada.

**A.**

Examinadas las modalidades de confiscación presentes en nuestro ordenamiento jurídico, conviene hacer hincapié

en que la naturaleza *in personam* o *in rem* de una acción depende de lo que persiga el estatuto que la habilita. Esto, habida cuenta de que no es la naturaleza de la acción, sino el verdadero propósito del estatuto, lo que debe guiar el análisis. Downs v. Porrata, Fiscal, 76 DPR 611, 619 (1954). Por tal motivo, desde hace varias décadas este Tribunal ha enfatizado que la confiscación civil tiene una **marcada naturaleza punitiva**. Coop. Seg. Múlt. v. ELA, *supra*, pág. 664; Centeno Rodríguez v. ELA, 170 DPR 907, 913 (2007); Santiago v. Supte. Policía de PR, 151 DPR 511, 515-516 (2000); Del Toro Lugo v. ELA, *supra*, pág. 987; Carlo v. Srio. de Justicia, 107 DPR 356, 362 (1978). Independientemente de la naturaleza civil de la acción, la manera como ha sido aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, reflejan su propósito punitivo. Santiago v. Supte. Policía de PR, *supra*, pág. 515; Del Toro Lugo v. ELA, *supra*, págs. 986-987. Sin duda, la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo. Carlo v. Srio. de Justicia, *supra*, pág. 362; Ochoteco v. Tribunal Superior, 88 DPR 517, 528 (1963). Ello, pues, es evidente que su objetivo es castigar por la comisión de una ofensa contra la ley.

Lo que antecede guarda perfecta armonía con pronunciamientos jurisprudenciales emitidos por el Tribunal Supremo Federal, de los cuales se desprende que

si bien la confiscación se denomine civil y se considere independiente a la causa penal, ésta no deja de ser un proceso esencialmente punitivo que busca penalizar por la conducta delictiva. *Véanse* Austin v. US, 509 US 602 (1993); Plymouth Sedan v. Pennsylvania, 380 US 693, 697 (1965). Particularmente, en el caso Plymouth Sedan v. Pennsylvania, *supra*, pág. 697, el Tribunal Supremo Federal dejó claramente establecido que:

> [P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, **are in their nature criminal** [and] though technically a civil proceeding, [it] is in substance and effect a criminal one .... [S]uits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasi-criminal nature. Íd. (Énfasis suplido).

### III

Es conocido que a partir de la década del sesenta el proceso de confiscaciones en Puerto Rico estuvo regulado por la *Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones*, Ley Núm. 39 de 4 de julio de 1960, 34 LPRA ants. secs. 1721 y 1722. No obstante, con el objetivo de actualizar las disposiciones de la mencionada legislación y, sobre todo, ampliar la facultad del Estado para confiscar la propiedad utilizada con propósitos ilegales, en el 1988 se aprobó la *Ley Uniforme de Confiscaciones*, Ley Núm. 93 de 13 de julio de 1988 (Ley Núm. 93), 34 LPRA ant. sec. 1723 *et seq*. La promulgación de esta pieza legislativa constituyó parte del proceso

que llevó a cabo el Estado durante décadas para uniformar los procedimientos de confiscación diseminados en diferentes leyes especiales.

En lo tocante al propósito de la Ley Núm. 93, en su *Exposición de Motivos* se señalaba expresamente que:

> La confiscación de los bienes que propician la comisión de un delito puede ser un **elemento disuasivo** para el delincuente que por temor a exponerse al peligro de perder su propiedad limita su actividad delictiva o no le resulta tan fácil su realización. *Véase* Ley Núm. 93-1988 (1988 Leyes de Puerto Rico 409). (Énfasis suplido).

Como puede apreciarse, conforme al texto de la reseñada *Exposición de Motivos*, la confiscación de bienes se consideraba un mecanismo disuasivo para que una persona, ante el riesgo de perder su propiedad, limitara su actividad delictiva o se le dificultara su realización. La intención de la Ley Núm. 93 era evitar que la propiedad confiscada pudiera volverse a utilizar para fines ilícitos y servir de castigo adicional para disuadir a los criminales. Centeno Rodríguez v. ELA, *supra*, pág. 913; Negrón v. Srio. de Justicia, 154 DPR 79, 86-87 (2001). Se pretendía desincentivar la conducta criminal al imponer un castigo adicional a la posible privación de la libertad tras un encausamiento penal. Coop. Seg. Múlt. v. ELA, *supra*, pág. 663.

En las ocasiones en que este Tribunal examinó las disposiciones de la Ley Núm. 93, consistentemente señaló que el procedimiento de confiscaciones contenido en ésta

era de carácter civil o *in rem*; es decir, iba dirigido contra la cosa que se alegaba fue utilizada en la comisión del delito. En ese sentido, la acción de confiscación se consideraba independiente de la acción penal que la motivó. Empero, a través de múltiples pronunciamientos jurisprudenciales, este Tribunal dejó claro que aunque el procedimiento de confiscaciones de la Ley Núm. 93 era *in rem*, **éste perseguía y reflejaba un propósito punitivo**. Tal como expresé, la confiscación constituía un mecanismo en la lucha contra el crimen y actuaba como una sanción penal adicional contra el criminal. Por lo tanto, si bien el proceso mantenía su forma civil, su objetivo era uno marcadamente punitivo.

Conscientes de la evidente naturaleza punitiva que acarrean los estatutos confiscatorios de propiedad privada, nuestro desarrollo jurisprudencial ha enfatizado que éstos no son favorecidos por las cortes y deben ser **interpretados de forma restrictiva**. A tales efectos, este Tribunal ha sostenido que estos estatutos no deben interpretarse de manera que propicien la confiscación, ni mucho menos se debe recurrir a su letra estricta para sostenerla, cuando existe un lenguaje dudoso en la propia ley. Pueblo v. González Cortés, *supra*, pág. 168. De esta forma, los estatutos confiscatorios deben ser interpretados de tal suerte que resulten consistentes con la justicia y los dictados de la razón natural. Coop.

Seg. Múlt. v. ELA, *supra*, pág. 668; Pueblo v. González Cortés, *supra*, pág. 168.

Por su parte, el Tribunal Supremo Federal también ha desarrollado abundante jurisprudencia de la cual se desprende que las garantías constitucionales son aplicables en los casos de confiscación civil de la propiedad, en la medida en que ésta tenga un propósito punitivo. Así, se destaca que en Plymouth Sedan v. Pennsylvania, *supra*, el Tribunal Supremo Federal no vaciló en aplicar las protecciones constitucionales contra registros irrazonables en casos criminales a un proceso de confiscación civil. Tampoco titubeó ese Foro Federal en Austin v. US, *supra*, al resolver que las salvaguardas de la Octava Enmienda de la Constitución de los Estados Unidos, las cuales prohíben el uso de castigos crueles e inusitados, operan en los casos civiles de confiscación. *Véanse* A.W. Laing, *Asset Forfeiture & Instrumentalities: the Constitutional Outer Limits*, 8 N.Y.U.J.L. & Liberty 1201 (2014); A. Seals Bersinger, *Grossly Disproportional to Whose Offense? Why the (Mis)Application of Constitutional Jurisprudence on Proceeds Forfeiture Matters*, 45 Ga. L. Rev. 841 (2011).

**A.**

Como vimos, la verdadera naturaleza de la confiscación civil es una punitiva, por lo que conlleva como hermenéutica una interpretación restrictiva. Cabe puntualizar que esta norma de interpretación siempre ha

sido aplicada por este Tribunal a los estatutos confiscatorios promulgados en nuestra jurisdicción, cónsono con el esquema de garantías constitucionales aplicable. Veamos.

El aludido andamiaje jurisprudencial comenzó a forjarse hace aproximadamente seis décadas cuando este Tribunal resolvió el caso Downs v. Porrata, Fiscal, *supra*. Ante una controversia que consistía en determinar el efecto de un indulto total, pleno e incondicional otorgado a un imputado de delito con relación a sus propiedades confiscadas, este Tribunal resolvió que ello implicaba la obligación de devolverlas. Íd., pág. 617. En síntesis, se razonó que:

> [A]l borrarse todo vestigio de culpabilidad de la persona, la propiedad confiscada se convierte automáticamente en una propiedad inocente (innocent property) que puede revertir a su dueño, puesto que es la culpa del dueño la que la convierte en un instrumento o medio ilícito para la comisión de un delito. Íd., pág. 619.

Años más tarde, en Carlo v. Srio. de Justicia, *supra*, este Tribunal tuvo ocasión para dictaminar lo que procede cuando un imputado de delito que resulta absuelto luego de ventilado el juicio en sus méritos impugna la confiscación de la que fue objeto su propiedad. Trabada así la controversia, este Tribunal concluyó que:

> La absolución en los méritos adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. Daría lugar a una **anomalía** resolver bajo estas circunstancias que no habiéndose probado en el primer caso que el

acusado utilizara el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. Íd., pág. 363. (Énfasis suplido).

En el mencionado caso se trajo a colación la doctrina de impedimento colateral por sentencia,[71] toda vez que se determinó que ésta exigía la desestimación de la acción *in rem* si al resolverse el caso criminal se adjudicaron y determinaron hechos decisivos para el procedimiento civil de confiscación. Íd., pág. 363. Asimismo, este Tribunal advirtió que no podía disminuirse, ni mucho menos ignorarse, la consecuencia de una sentencia absolutoria recaída sobre el hecho medular

---

[71] En repetidas ocasiones, este Tribunal ha expresado que la doctrina de impedimento colateral por sentencia constituye una modalidad de cosa juzgada. Presidential v. Transcaribe, 186 DPR 263, 276 (2012); Beníquez *et al*. v. Vargas *et al*., 184 DPR 210, 225 (2012); SLG Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 155 (2011). Empero, se distingue de la *cosa juzgada*, ya que para su aplicación no es necesario que se dé el requisito de identidad de causas. Presidential v. Transcaribe, *supra*, págs. 276-277; Beníquez *et al*. v. Vargas *et al*., *supra*, pág. 225; SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 155. En síntesis, el impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y esa determinación es concluyente en el segundo pleito entre las mismas partes. Presidential v. Transcaribe, *supra*, pág. 277; Beníquez *et al*. v. Vargas *et al*., *supra*, pág. 225. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 155. De esta forma, la referida doctrina busca promover la economía procesal al salvaguardar varios aspectos, a saber: (1) proteger a los litigantes contra pleitos repetidos sobre la misma controversia; (2) evitar juicios innecesarios; y (3) prevenir sentencias incongruentes. Presidential v. Transcaribe, *supra*, pág. 276; Beníquez *et al*. v. Vargas *et al*., *supra*, pág. 225. Por lo tanto, el fin es evitar que la parte afectada por el impedimento colateral por sentencia vuelva a litigar asuntos que perdió en un pleito anterior.

de ambos procedimientos. Esto, habida cuenta que se anticipó que sostener la confiscación en esas circunstancias conllevaría derrotar garantías de estirpe constitucional, tales como: colocar a la persona en riesgo de ser castigada dos veces por el mismo delito y vulnerar su derecho a un debido proceso de ley y a no tomar su propiedad sin mediar justa compensación. Íd., págs. 363-364.

En el caso Del Toro Lugo v. ELA, *supra*, este Tribunal amplió la norma general vigente hasta entonces pautada en Carlo v. Srio. de Justicia, *supra*. A esos efectos, se concluyó que una sentencia final y firme que dicta no causa en vista preliminar constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en el pleito de confiscación. Del Toro Lugo v. ELA, *supra*, pág. 993. Del mismo modo, se resolvió que una determinación final y firme con relación a la supresión de evidencia ilegalmente obtenida, realizada en el procedimiento penal que da base a la confiscación, también será cosa juzgada en su modalidad de impedimento colateral por sentencia en la acción *in rem*. Íd., pág. 997. A pesar de que las dos determinaciones judiciales enumeradas no constituyen una adjudicación en los méritos de la culpabilidad o inocencia del acusado, este Tribunal estableció que no procedía la confiscación bajo esas circunstancias porque no existía el elemento esencial de

conexión entre la propiedad confiscada y su utilización en la comisión de un delito.

Con posterioridad, este Tribunal resolvió el caso Suárez v. ELA, *supra*. En esencia, se enfrentó a la particularidad de que unos cargos criminales fueron desestimados por incumplimiento con los términos de juicio rápido y ello se presentó como fundamento para la impugnación de la confiscación. Ante ese cuadro, este Tribunal siguió la progenie jurisprudencial trazada y razonó que la desestimación de los cargos criminales por incumplimiento con los términos de juicio rápido constituía impedimento colateral por sentencia en la acción civil de confiscación. Aunque se reconoció que el Estado tenía la facultad para volver a presentar acusaciones conforme a la Regla 67 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 67, se sostuvo que:

> [N]o debe penalizarse al propietario de la cosa ocupada con la exclusión de la doctrina de cosa juzgada en procesos de confiscación, cuando fue precisamente por falta de diligencia del Estado en el trámite del proceso criminal que se obtuvo un resultado favorable a dicho propietario. Se estaría beneficiando doblemente al Estado por su incumplimiento con los términos de juicio rápido: no sólo podría volver a presentar nuevas acusaciones o denuncias sino que también excluiría del proceso de confiscación la aplicación de la doctrina de cosa juzgada. Ello, a pesar de que el Estado mismo provocó la desestimación de los cargos criminales con la consecuencia de que además de sujetar al imputado al trajín de un segundo proceso criminal, tiene la ventaja de excluir un importante fundamento para impugnar la acción de confiscación. Suárez v. ELA, *supra*, pág. 64.

En armonía con la tendencia de condicionar el pleito de impugnación de confiscación al resultado de la acción penal, este Tribunal resolvió los casos Ford Motor v. ELA, 174 DPR 735 (2008) y Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008) (*Per Curiam*). En Ford Motor v. ELA, *supra*, se determinó que el archivo y sobreseimiento de una acusación criminal, producto de cumplir un programa de desvío, constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en la acción civil de confiscación. Íd., pág. 746. Enfrentado con una situación análoga, pero con la particularidad de que se trataba de un menor, en Díaz Morales v. Dpto. de Justicia, *supra*, este Tribunal resolvió que una vez se cumple cabalmente con las condiciones del programa de desvío y se obtiene el archivo del caso criminal, la confiscación no puede subsistir. Íd., págs. 965-966.

Recientemente, en Coop. Seg. Múlt. v. ELA, *supra*, este Tribunal continuó la tendencia jurisprudencial de no divorciar totalmente el proceso civil de confiscación del proceso criminal y de no aplicar mecánica y absolutamente la ficción jurídica del proceso *in rem*. Al respecto, se dictaminó que a pesar de la diferencia en el *quantum* de prueba que se requiere en el caso criminal en comparación con la acción *in rem*, si no prospera la causa criminal contra la persona imputada es difícil continuar la confiscación en el área civil. Íd., pág. 674. Finalmente,

se determinó que la acción civil confiscatoria se extingue cuando el imputado de delito muere antes de que la convicción advenga final y firme. En esas circunstancias, se razonó que permitir "la confiscación de un bien sin que nadie sea convicto de delito, extend[ería] irrazonablemente la ficción jurídica en la que se funda la acción, al extremo de que una 'cosa', por sí misma, sería culpable de la comisión de un acto delictivo". Íd., pág. 681.

Del andamiaje jurisprudencial descrito puede colegirse que si bien este Tribunal ha reconocido y validado la independencia de la acción *in rem* con respecto a la acción *in personam*, reiteradamente ha sostenido el firme criterio de atar la primera al resultado de la causa criminal contra el alegado autor del delito que fundamenta la confiscación. Incluso, tal como se señaló, se ha reafirmado ese vínculo necesario aun cuando la absolución criminal no sea en los méritos. Al así resolver, se ha dejado claro que "no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de **excepciones a la independencia** del proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito". Íd., pág. 676. (Énfasis suplido).

**B.**

Escudriñado el esquema decisorio, resulta oportuno señalar que en medio de ese desarrollo jurisprudencial la entonces Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 32-2000 (Ley Núm. 32). La promulgación de esta ley tuvo el objetivo de enmendar el Art. 2 de la Ley Núm. 93 para, entre otras cosas, añadirle un inciso (c) mediante el cual se **excluyó expresamente** la aplicación de la doctrina de impedimento colateral por sentencia en casos de confiscación. Particularmente, la enmienda dispuso que el resultado favorable para un imputado en cualquiera de las etapas de la acción criminal no sería impedimento ni tendría efecto de cosa juzgada en la acción civil de confiscación, aunque ésta se basara en los hechos imputados en la acción penal. *Véase* Ley Núm. 32-2000 (2000 (Parte 1) Leyes de Puerto Rico 373, 376).

Ahora bien, también es menester resaltar que tres años más tarde de la aprobación de la Ley Núm. 32, la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 18-2003 (Ley Núm. 18), con el propósito de enmendar nuevamente el Art. 2 de la Ley Núm. 93. En lo pertinente, la enmienda derogó el inciso (c) que añadió la Ley Núm. 32. La Ley Núm. 18 expresamente reconoció que la exclusión de la aplicación de la doctrina de impedimento colateral por sentencia mediante la Ley Núm. 32 se llevó a cabo sin considerar lo resuelto por este Tribunal en <u>Carlo v. Srio de Justicia</u>, *supra*, y en <u>Del Toro Lugo v. ELA</u>, *supra*. *Véase* Ley Núm. 18-2003 (2003 (Parte 1) Leyes de Puerto

Rico 64). Del mismo modo, en la parte expositiva de la Ley Núm. 18 se enunció que la enmienda introducida por la Ley Núm. 32:

> [V]ulnera[ba] el derecho del acusado a no ser juzgado dos veces por el mismo delito y el derecho a no ser privado de su propiedad sin el debido proceso de ley y previa justa compensación. Íd., pág. 64.

Además, se expuso que el objetivo de la Ley Núm. 18 era corregir la situación causada por la enmienda al Art. 2 de la Ley Núm. 93, de modo que se ajustara al ordenamiento jurídico vigente y, sobre todo, al mandato constitucional. Íd., pág. 65. Ello, debido a que la entonces Asamblea Legislativa razonó que la exclusión de la mencionada doctrina suponía un menoscabo de los postulados constitucionales fundamentales en una democracia. Íd.

Finalmente, en su parte expositiva la Ley Núm. 18 también aludió a la obligación que tiene la Asamblea Legislativa de velar por el fiel cumplimiento de nuestra Constitución al no permitir la aprobación de leyes mediante las cuales el Estado se beneficie de sus propios actos ilegales, en detrimento de las garantías constitucionales de los ciudadanos. Íd.

**IV**

Expuesto lo anterior, procede considerar las disposiciones del estatuto vigente que regula las confiscaciones en los casos hoy, a fin de evidenciar la

improcedencia del curso de acción adoptado por la Mayoría. Veamos.

Como es conocido, actualmente el procedimiento de confiscación en nuestra jurisdicción está regido por la Ley Núm. 119-2011, conocida como la *Ley Uniforme de Confiscaciones del 2011* (Ley Núm. 119), 34 LPRA sec. 1724 *et seq*. Esta ley derogó la Ley Núm. 93 y principalmente se creó con el objetivo de establecer las normas que regirán el procedimiento a seguir en toda confiscación.[72] Así, la Ley Núm. 119 se promulgó para instituir un trámite expedito y uniforme para la confiscación de bienes por parte del Estado y la disposición de éstos. Asimismo, aclara los requisitos que deberá cumplir quien busque impugnar una confiscación. A su vez, la ley crea una Junta de Confiscaciones, adscrita al Departamento de Justicia, cuya función primordial es custodiar, conservar, controlar y disponer de la propiedad que el Estado adquiera mediante el acto de confiscación. 34 LPRA secs. 1724, 1724b.

En lo que atañe a la controversia ante este Tribunal, la Ley Núm. 119 **reafirma** como política pública la naturaleza *in rem* de las confiscaciones. A tales efectos, se sostiene que la confiscación es un proceso

---

[72] En cuanto a la propiedad sujeta a ser confiscada, el Art. 9 de la Ley Núm. 119 le otorga facultad al Estado para ocupar y hacer suyos todos aquellos bienes utilizados en violación a estatutos confiscatorios contenidos tanto en nuestro Código Penal como en leyes especiales que autoricen la confiscación. 34 LPRA sec. 1724f.

civil dirigido contra la cosa misma e independiente de cualquier otro proceso que se pueda llevar contra el dueño o el poseedor de los bienes ocupados. 34 LPRA sec. 1724e. En otras palabras, al igual que ha sido reconocido y reiterado por este Tribunal, la ley dispone que la acción de confiscación será independiente de cualquier otra acción, ya sea penal, administrativa o de otra índole. Así las cosas, no está demás esbozar parte de la *Exposición de Motivos* de la Ley Núm. 119 en la cual se reitera que en nuestra jurisdicción:

> [L]a confiscación es una acción civil o *in rem*, distinta y separada de cualquier acción *in personam*. La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. El procedimiento *in rem* tiene existencia independiente del procedimiento penal de naturaleza *in personam,* y no queda afectado en modo alguno por éste. Los procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil. *Véase* Ley Núm. 119-2011 (2011 (Parte II) Leyes de Puerto Rico 1762-1763).

En lo pertinente a los casos que nos ocupan, la Ley Núm. 119 también cuenta con un proceso de impugnación de la confiscación. Al respecto, el Art. 15 dispone que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo, o cualquier otro procedimiento relacionado a los mismos hechos". 34 LPRA sec. 1724l. En

consecuencia, la ley establece que "[e]l demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación". Íd. Además, surge del proceso de impugnación que una vez contestada la demanda el foro judicial celebrará una vista de legitimación activa. Esto, en aras de determinar si antes de los hechos que motivaron la confiscación el demandante ejercía dominio y control con relación a la propiedad en cuestión. Íd. En la eventualidad de que no se cumpla con el requisito de legitimación activa, el tribunal desestimará inmediatamente el pleito. Íd.

Antes de concluir con el examen de las disposiciones de la Ley Núm. 119, valga enfatizar que, cónsono con lo que se ha reseñado de los estatutos confiscatorios, en la parte expositiva de la aludida ley también se insiste en que la acción de confiscación constituye un **elemento disuasivo** a la actividad criminal. Esto, debido al **temor que infunde** la pérdida de la propiedad. *Véase* Ley Núm. 119-2011 (2011 (Parte II) Leyes de Puerto Rico 1761). No obstante, a diferencia de la Ley Núm. 32, en la Ley Núm. 119 no se incluyó prohibición expresa alguna en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia en pleitos de impugnación de confiscación. Por el contrario, se mantiene el análisis jurisprudencial en cuanto al carácter independiente de la acción penal y el proceso de confiscación civil. Ello, con las excepciones

a la independencia que he reseñado por motivo de la relación tan estrecha entre estos dos procesos.

## V

Evaluados los fundamentos jurídicos y estatutarios pertinentes, procedía emitir el correspondiente dictamen y proveer un remedio adecuado, completo y oportuno en los casos previamente consolidados.

Conforme expresé, los casos de epígrafe se originaron cuando varios ciudadanos, al igual que entidades financieras y sus respectivas aseguradoras, incoaron acciones judiciales contra el ELA en las cuales impugnaron la confiscación de sus correspondientes propiedades. En particular, alegaron que la confiscación se debía dejar sin efecto como consecuencia del desenlace favorable obtenido por los imputados de delito en la acción penal. De esta forma, sostuvieron que existía impedimento colateral por sentencia para continuar la acción civil confiscatoria. Asimismo, los demandantes arguyeron que desligar el resultado de la acción penal del proceso civil de confiscación vulneraría garantías constitucionales, tales como: (1) el derecho a no ser privado de la propiedad sin el debido proceso de ley y sin previa justa compensación; y (2) el derecho de no ser juzgado dos veces por el mismo delito.

Por su parte, el ELA se opuso y, alegó, en síntesis, que la confiscación civil de los bienes es un proceso completamente independiente de cualquier otro proceso que

se lleve a cabo contra el propietario o poseedor de éstos. De acuerdo al ELA, el resultado de la causa penal no es pertinente para el proceso civil de confiscación. Por lo tanto, arguyó que bajo la ley de confiscaciones vigente no procede la aplicación de la doctrina de impedimento colateral por sentencia. Del mismo modo, expuso que el proceso de impugnación contenido en la Ley Núm. 119 no infringe el debido proceso de ley ni lesiona la prohibición constitucional contra la doble exposición.

Aquilatados los argumentos de las partes, los foros primarios declararon con lugar la impugnación de las confiscaciones y, por ende, ordenaron la devolución de la propiedad. Inconforme, el ELA recurrió ante el Tribunal de Apelaciones. Esencialmente, este último foro confirmó los dictámenes recurridos. Insatisfecho aún, el ELA acude ante este Tribunal.

Tras ponderar la jurisprudencia desarrollada en torno a los estatutos confiscatorios, conjuntamente con las disposiciones de la Ley Núm. 119 y su historial legislativo, soy del criterio que procedía reconocer la inexistencia de una norma absoluta que separe irremediablemente el proceso de confiscación civil del resultado de la acción penal. Por el contrario, la independencia de estos procesos sigue resguardando una excepción en aquellos casos en que el imputado de delito obtiene una resolución favorable en el procedimiento

criminal instado en su contra. Varias razones apoyan tal contención. Elaboremos.

**A.**

En primer lugar, y en armonía con los pronunciamientos emitidos por el Tribunal Supremo Federal, debe determinarse si el proceso de confiscación contenido en la Ley Núm. 119 es por intención estatutaria o por su propia naturaleza, criminal y punitivo o civil y remedial. *Véanse* Austin v. United States, *supra*; United States v. One Assortment of 89 Firearms, 465 US 354 (1984). En cuanto a ello, tan reciente como en el 2014 y mientras se evaluaba la actual ley de confiscaciones, este Tribunal reiteró que los estatutos confiscatorios actúan como una **sanción penal adicional** contra los imputados de delito. Doble Seis Sport v. Depto. Hacienda, *supra*, pág. 784; Mapfre v. ELA, 188 DPR 517, 525 (2013). Es decir, si bien el proceso contenido en la Ley Núm. 119 es de naturaleza civil en su forma, tiene un marcado propósito punitivo. La finalidad del proceso de confiscación, según ha sido claramente reconocido por la Asamblea Legislativa, es un disuasivo y pretende **penalizar** al imputado de delito con la pérdida de su propiedad, además de la posible pérdida de la libertad. No se halla nada en la ley o en su historial legislativo que lleve a concluir que no se trata de un esquema estatutario punitivo.

Adviértase que ante esa realidad, no existe fundamento para que se abandone el estándar de

interpretación restrictiva que consecuentemente se desprende de nuestros pronunciamientos previos. Nótese que la Ley Núm. 119 no revela la voluntad legislativa, expresa o implícita, de dejar sin efecto todo el desarrollo doctrinal y jurisprudencial aplicable a los casos de confiscaciones civiles. Tampoco, como en ocasión anterior, incluyó un lenguaje en el que expresamente prohibiera traer a colación el resultado favorable en la esfera penal con el fin de erradicar un hecho base de que la propiedad incautada fue utilizada en la comisión de un delito. Por tanto, nada en la referida ley modifica la interpretación restrictiva que este Tribunal le ha otorgado a los estatutos confiscatorios anteriores.[73] Ciertamente, es completamente lógica y no debe sorprender la doctrina de la aplicación restrictiva en este tipo de estatuto habida cuenta que de lo que se trata es que mediante la confiscación el Estado priva al ciudadano del disfrute de su propiedad. Recordemos que nuestro ordenamiento jurídico resguarda el derecho al disfrute de la propiedad, por lo que la privación de ésta debe ser producto de un proceso conforme a derecho.

En virtud de las garantías constitucionales aplicables, del estándar de interpretación aplicable y la

---

[73] En su análisis de la Ley Núm. 119-2011, la profesora Nevares-Muñiz afirma que ésta debe ser interpretada restrictivamente a favor del dueño del bien ocupado. D. Nevares-Muñiz, Sumario de Derecho Procesal Penal puertorriqueño, 10ma ed., Instituto para el Desarrollo del Derecho, Inc., 2014, pág. 279.

normativa vigente, entiendo que es improcedente divorciar totalmente el desenlace favorable alcanzado en el proceso penal del proceso civil de confiscación. Ello porque, como es sabido, tal proceso civil está fundado en que se establezca la conexión entre la propiedad y la comisión de un delito. La ficción jurídica en que se funda el proceso *in rem* no tiene el efecto de convertir el bien confiscado en *autor* de delito, ni mucho menos permite que se absuelva al imputado de delito, pero se declare culpable a la cosa en sí. No se puede utilizar la ficción jurídica del proceso *in rem* para plantear que la cosa es responsable por sí misma de la conducta delictiva. Es decir, que las cosas inanimadas delinquen.

Ante una extinción de la causa penal, no se puede tratar a la cosa como si fuera autora del delito en cuestión.[74] Recordemos que al final del día alguien tiene que usar la cosa delictivamente; por definición, la conducta delictiva requiere de algún grado de intervención humana. Tal como lo señala el profesor Chiesa Aponte, "[p]ara que el Estado pueda ejercer su derecho a castigar (*ius puniendi*) es necesario que el ser humano externalice sus pensamientos mediante la realización de una acción". L.E. Chiesa Aponte, <u>Derecho Penal Sustantivo</u>, 2da ed., Publicaciones JTS, 2013, pág. 94. A la luz de lo anterior, difícilmente se podría desvincular totalmente el desenlace

---

[74] Ello, claro está, a menos que la cosa en sí misma sea un medio o producto de un delito. Es decir, que sea delictiva en sí misma.

de la causa penal del proceso civil de confiscación. Tal desenlace no puede escindirse sin más.

Indudablemente, avalar una conclusión contraria conllevaría una inaceptable incongruencia jurídica. Ello, pues, la aprobación de la Ley Núm. 119 no alteró esta realidad: el resultado de la causa penal está íntimamente atado al proceso civil de confiscación. En ese sentido, no debe ignorarse que el estatuto confiscatorio busca penalizar por la comisión de un delito y parte del supuesto de que se ha cometido un delito. A esos efectos, si procediera la confiscación luego de un resultado favorable en el caso criminal, **el Estado estaría utilizando su poder punitivo para castigar a un ciudadano por la comisión de un delito aunque éste no se hubiera cometido.** A todas luces, en la medida en que el procedimiento civil no es conforme a derecho, el Estado estaría incautando propiedad privada sin que ésta se haya utilizado en actividad criminal.

Adviértase que lo anterior levanta serias interrogantes jurídicas, ya que compromete postulados constitucionales fundamentales. Esto, pues, el acto de confiscación está sujeto a la rigurosidad del mandato constitucional de que exista una causa justificada, a la vez que prohíbe tomar propiedad privada sin justa compensación. Ante ello, el sólido enfoque de interpretación restrictiva permite balancear adecuadamente el interés del Estado y las salvaguardas constitucionales

que el propio legislador reconoció en la legislación bajo examen.

Como se sabe, la facultad de tomar o expropiar propiedad privada para uso público es uno de los poderes inherentes que posee el Estado. Aut. Carreteras v. 8,554.741 m/c I, 172 DPR 278, 291 (2007). No obstante, esa autoridad está limitada porque en nuestro ordenamiento jurídico rige la norma de que el Estado no puede incautar o perjudicar la propiedad privada si no media el pago de una justa compensación y si no se actúa conforme al procedimiento provisto en ley.[75] Íd. Así lo ordena tanto la Constitución de Puerto Rico como la Quinta Enmienda de la Carta Magna de los Estados Unidos. Art. II, Sec. 9, Const. ELA, Tomo 1, ed. 2008, págs. 323-324; Emda. V, EE. UU., LPRA, Tomo 1, ed. 2008, pág. 189. Cónsono con esta protección constitucional, del Art. 1930 del Código Civil surge que "[n]adie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de entidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley". 31 LPRA sec. 1113. A su vez, nuestra Constitución consagra como fundamental el derecho del ser humano al

---

[75] Con relación al pago de justa compensación, este Tribunal ha expresado que lo que se pretende es colocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad. Amador Roberts et als. v. ELA, 191 DPR 268 (2014); Aut. Carreteras v. 8,554.741 m/c II, 172 DPR 1050, 1060 (2008); ELA v. Rexco Industries, Inc., 137 DPR 683, 689 (1994).

disfrute de la propiedad. Art. II, Sec. 7, Const. ELA, Tomo 1, ed. 2008, pág. 296. Nótese que la propia parte expositiva de la Ley Núm. 119 también dispone que el derecho fundamental de todo ciudadano al disfrute de su propiedad se debe tener presente a la hora de establecer normas en cuanto al acto de confiscación. *Véase* Ley Núm. 119-2011 (2011 (Parte II) Leyes de Puerto Rico 1761). A tono con el mandato constitucional y estatutario descrito, se ha determinado que el Estado tiene la obligación de pagar justa compensación cuando toma o incauta una propiedad mediante el uso de sus facultades. *Véanse* Amador Roberts *et als*. v. ELA, 191 DPR 268 (2014); Hampton Development Corp. v. ELA, 139 DPR 877 (1996).

Entonces, aunque se ha reconocido que el derecho a la propiedad no es absoluto, indudablemente el efecto que acarrea escindir el resultado de la acción penal de la confiscatoria está reñido con los postulados constitucionales y estatutarios que salvaguardan el derecho al disfrute de la propiedad. Y es que, claro está, las garantías constitucionales no son ajenas a los procesos de confiscación. Ante esa realidad, los tribunales vienen llamados a aquilatar la validez de una ley a la luz de los preceptos constitucionales pertinentes, con el objetivo de proteger los derechos fundamentales de los ciudadanos.

De mi parte, reitero la adecuacidad del enfoque restrictivo que se le ha otorgado a este tipo de estatuto

y reconozco que para resguardar el interés del Estado y las protecciones constitucionales que cobijan a los ciudadanos, no puede separarse tajantemente el proceso civil de confiscación de lo que acontece en la acción penal, sin menoscabar garantías constitucionales.[76]

**B.**

Ante esa realidad, la interpretación aquí expuesta, en observancia de los postulados constitucionales y de lo expresado en la política pública de la Ley Núm. 119, exige reconocer que aquel que impugne la confiscación de su propiedad no se le puede impedir presentar exclusivamente prueba del resultado favorable obtenido en la acción penal, a fin de impugnar con éxito la toma injustificada de su propiedad. Por tanto, reafirmo que no estamos ante una aplicación rígida de la doctrina de impedimento colateral por sentencia, sino, más bien, de excepciones a la independencia de la acción *in rem* sostenidas en la extinción de la acción penal contra el imputado de delito. Indiscutiblemente, tal contención también es compatible con una interpretación restrictiva, como lo dicta la normativa jurisprudencial vigente para este tipo de estatuto. Además, es cónsono con la tendencia en nuestra

---

[76] Debe hacerse hincapié en que la Ley Núm. 119-2011 establece como política pública que los mecanismos que se creen con el fin de facilitar y agilizar el proceso de confiscación, **deben velar por los derechos y reclamos de las personas afectadas por ésta.** *Véase* 34 LPRA sec. 1724n.

jurisdicción de atenuar la severidad de la confiscación y de servir de contrapeso al poder inmanente del Estado.

Una determinación contraria daría al traste con la arraigada norma de interpretación que este Tribunal ha aplicado a los estatutos confiscatorios, al crear un muro infranqueable entre la acción penal y la acción civil de confiscación. A su vez, trastocaría lo que surge de la intención legislativa de la Ley Núm. 119; esto es: "**salvar el interés propietario de los dueños de la propiedad confiscada, minimizar la pérdida de fondos públicos en el pago excesivo de intereses y aliviar nuestro sistema judicial**". *Véase* Ley Núm. 119-2011 (2011 (Parte II) Leyes de Puerto Rico 1762) (Énfasis suplido). Ese proceder solo acarrearía una incongruencia jurídica, revocaría *sub silentio* todo el andamiaje jurisprudencial aplicable a los casos de confiscación civil, y no ponderaría otras consecuencias nefastas para aquellos a los que se les ha incautado injustificadamente su propiedad.

## VI

Por lo anteriormente expuesto, disiento del curso de acción adoptado por una Mayoría en la Resolución que certifican en el día de hoy y emitiría el dictamen que nos exige el Derecho.

                                        Luis F. Estrella Martínez
                                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya y Universal Insurance Company, Puerto Rican American Insurance Company, Reliable Financial Services, Inc., et als., Luis Marzán Oyola, Lloyd S. Flores Báez, Toyota Credit y otros<br><br>    Recurridos<br><br>            v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>    Peticionario | CC-2014-767 |
| José Antonio Cruz López<br><br>    Recurrido<br><br>            v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>    Peticionarios | CC-2012-886 |
| Orlando Rodríguez Rodríguez<br><br>     Recurrido<br><br>            v.<br><br>Estado Libre Asociado de Puerto Rico, et als.<br><br>    Peticionarios | CC-2012-922 |

Reliable Financial
Services, Inc. y Triple-S
Propiedad

    Recurridos

         v.

Estado Libre Asociado de
Puerto Rico

    Peticionario

CC-2013-541

---

William Morales Rosario

    Recurrido

         v.

Estado Libre Asociado de
Puerto Rico

    Peticionario

CC-2013-560

---

Reynaldo Ayala Villanueva,
Raymond Irizarry García

    Recurridos

         v.

Estado Libre Asociado de
Puerto Rico

    Peticionario

CC-2013-572

---

María del C. Acevedo
Márquez

    Recurrida

         v.

Estado Libre Asociado de
Puerto Rico

CC-2013-730

| Mapfre Praico Insurance Company, Reliable Financial Services, Inc.<br><br>   Peticionarios<br><br>Y Waldemar R. Santiago Ramos y Fulano de Tal<br><br>          v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>   Peticionario | CC-2013-1077 | |

Voto particular disidente emitido por la Jueza Asociada Oronoz Rodríguez

En San Juan, Puerto Rico, a 10 de noviembre de 2015.

No puedo estar de acuerdo con la Resolución que emite hoy una mayoría que, a más de dos años de haberse consolidado esta controversia, ordena a que se desconsoliden los casos de epígrafe y convoca a una vista oral para recomenzar un proceso que había concluido. La determinación se agrava ante el hecho de que con ella se anula la decisión de una mayoría de jueces y juezas de este Tribunal que ya hemos votado sobre la manera de resolver este asunto.

Esta Resolución innecesaria no sólo dilata la solución de los casos –algunos de los cuales fueron presentados en el 2012– sino que posterga la decisión de una controversia de derecho que está generando confusión

y decisiones inconsistentes en nuestro ordenamiento jurídico. Evidencia de esto es que prácticamente todos los jueces y juezas de este Tribunal tenemos pendientes en nuestras oficinas múltiples casos sobre el mismo asunto, a saber: si bajo las disposiciones de la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011,[77] procede la continuación del trámite de confiscación de propiedad presuntamente utilizada en la comisión de un delito, aún después de que el acusado ha obtenido un resultado favorable en el procedimiento criminal por los mismos hechos.

Reconozco y creo en la importancia de las vistas orales para complementar nuestro ejercicio deliberativo y disponer de las controversias. En ese sentido considero que, en los casos **apropiados** y de manera **oportuna**, este Tribunal debe ordenar con mayor frecuencia la celebración de vistas orales. Pero cuando este mecanismo se utiliza –como ahora– de forma arbitraria y desacertada, sus bondades se malogran en perjuicio de las partes y del trámite apelativo.

Una vista oral es la exposición verbal de los argumentos de las partes frente a un tribunal apelativo.[78] Ésta se realiza al comienzo del trámite, antes de que el juez ponente circule entre los otros jueces el borrador de la Opinión que pretende emitir. En ello precisamente

---

[77] 34 LPRA sec. 1724 *et seq.*
[78] Black's Law Dictionary 1205 (9th ed. 2009) (traducción nuestra).

radica su utilidad; en que después de haber estudiado el expediente del caso y los planteamientos de derecho, pero antes de formar su juicio, los jueces puedan discutir con los representantes legales de las partes, y entre sí, aquellos aspectos de la controversia sobre los cuales tengan alguna duda, y cuya aclaración sea determinante para emitir su voto.[79] Por lo tanto, nótese la irregularidad en el presente caso cuando se ordena una vista oral después de haber circulado un borrador de Opinión[80] y después de que una mayoría de los miembros de este Tribunal emitimos nuestro voto favoreciendo una conclusión distinta a la que se propuso en dicho borrador de Opinión.

Por ello, en cuanto a estos ocho casos consolidados, me pregunto: ¿qué función cumple una vista oral a estas alturas si los miembros de este Tribunal ya hemos atendido en los méritos los señalamientos de error y una mayoría hemos coincidido, aunque por distintos fundamentos, en cuanto al resultado? Parecería, más bien, que lo que ha sucedido es la manipulación forzada del

[79] Mark R. Kravitz, *Written and Oral Persuasion in the United States Courts: A District Judge's Perspective on their History, Function, and Future*, 10 J. App. Prac. & Process 247, 264 (2009); Joseph W. Hatchett & Robert J. Telfer, III, *The Importance of Appellate Oral Argument*, 33 Stetson L. Rev. 139, 141-142 (2003).
[80] También se circularon varias ponencias disidentes, demostrativo de cuán formadas están las posturas y del nivel de consideración que se le dedicó a la adjudicación de esta controversia.

mecanismo de la vista oral para evitar que prevalezca un determinado resultado en derecho.

Pero no sólo es improcedente celebrar ahora una vista oral por las razones que he mencionado, sino además porque con ello se dilata indefinidamente la resolución de estos casos en menoscabo de la economía procesal. Como indiqué, varios de los recursos desconsolidados fueron presentados en el año 2012 y los demás en el 2013, estando listos todos para su adjudicación desde el pasado año. Pero no es hasta ahora, cuando ya una mayoría ha votado a favor de un curso de acción y sólo resta emitir la correspondiente sentencia, que sorpresivamente se opta por convocar una vista oral para reiniciar el trámite interno en este Tribunal. Así, casos que se presentaron hace más de cuatro años difícilmente podrán resolverse antes de que termine este año fiscal el 30 de junio de 2016.[81]

Esta dilación injustificada no sólo afecta a las partes en estos ocho recursos, quienes deberán esperar porque este Tribunal resuelva **de nuevo** sus casos, sino también a todos los litigantes en los numerosos casos que sobre este mismo asunto se encuentran sometidos para

---

[81] Ello porque, con gran probabilidad, el trámite luego de la vista oral será el siguiente: el caso se le asignará a un juez o jueza que comparta el criterio de la mayoría, quien tendrá 270 días para preparar su ponencia; una vez la circule, los otros jueces y juezas tendrán 30 días para examinarla y, luego, se podrán acoger al término reglamentario, lo cual implica 30 días adicionales por cada juez o jueza que ejerza ese derecho. Véase Regla 5 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

nuestra consideración y que ahora deberán permanecer retenidos en una gaveta. Peor aún, esta decisión prolonga la incertidumbre que persiste entre los miembros de la profesión legal y la judicatura con respecto a la Ley Núm. 119-2011, supra, y el procedimiento de confiscación. Así, continuarán las decisiones inconsistentes y continuarán llegando los recursos apelativos mientras este Tribunal se rehúsa a emitir una decisión.

Ante el hecho de que una mayoría de jueces y juezas disentimos del resultado propuesto en el borrador de Opinión, lo correcto era entregar el expediente del caso para que se le reasignara a un juez o jueza que haya votado con la mayoría, quien debía entonces emitir una breve sentencia disponiendo de los casos y anejando las correspondientes Opiniones de conformidad y disidentes. De esa manera, con una pluralidad de votos favoreciendo un resultado en particular, no sólo le resolvíamos el caso a las partes sino que le enviábamos una directriz a los tribunales inferiores sobre cómo disponer de estas controversias.

Sin embargo, esto no fue lo que pasó y para sostener una postura que fue rechazada por la mayoría, se decidió paralizar la disposición de unos casos que estaban resueltos y listos para certificarse. Mientras tanto, las partes y el Estado siguen gastando dinero y recursos litigando el mismo asunto, los casos se siguen acumulando

y la incertidumbre al respecto en nuestro ordenamiento sigue siendo la norma. Lamentable.

Por último, encuentro singular la fecha distante que se ha escogido para realizar la vista oral; 1 de marzo de 2016. No me parece lógico que si de verdad se está tan convencido de la necesidad de efectuar una vista oral –y en consideración a todo el tiempo que ha transcurrido desde que estos casos fueron presentados-, se haya pautado la misma para dentro de cuatro meses. Este término es excesivo, aun cuando se compara con los que recientemente hemos concedido en otros casos.[82] Así, sin encontrar razón para ello, me preocupa que este proceder menoscabe la debida administración de la justicia.

Maite D. Oronoz Rodríguez
Jueza Asociada

---

[82] AMPR v. Sist. Retiro Maestros IV, 190 DPR 469 (2014) (20 días); Brau, Linares v. ELA, 189 DPR 1068 (2013) (16 días); Watchtower Bible v. Mun. Dorado I, 2014 TSPR 138 (87 días).